No. 16-13004

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

—————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

v.

GGNSC ADMINISTRATIVE SERVICES, ET AL.,

Defendants-Appellees.

—————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA

—————————————

BRIEF FOR APPELLANT

—————————————

BENJAMIN C. MIZER
  *Principal Deputy Assistant*
  *Attorney General*

JOYCE WHITE VANCE
  *United States Attorney*
JENNY L. SMITH
  *Assistant United States Attorney*

MICHAEL S. RAAB
ABBY C. WRIGHT
  *(202) 514-0664*
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7252*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave., N.W.*
  *Washington, D.C.  20530*

*United States v. GGNSC Administrative Services*, No. 16-13004

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to 11th Cir. R. 26.1-1, Appellant certifies that the following individuals and entities have an interest in this case:

AdvanceMed, Inc.

AseraCare, Inc.

Barger, James F., Jr.

Beverly Enterprises

Billingsley, Michael B.

Bohl, Charles

Bowdre, the Honorable Karon O.

Brinkmann, Beth S.

Brooker, Renée

Brunson, Ronald R.

Chastain, Richard Aaron

Christie, James Sturgeon

Cross, Nola J. Hitchcock

Dalby, J.D.

Danella, Nicholas Adam

Davis, Christina

*United States v. GGNSC Administrative Services,* No. 16-13004

deGruy, Tiffany

Ehrlinspiel, Jason

Ellis, Cameron

Ellis, Laura

Everitt, Erin

Farmer, Marsha Brown

Fischbach, Nathan A.

Flanner, Mary C.

Frohsin, Henry

Golden Living

GGNSC Administrative Services, LLC

GGNSC Holdings LLC

Granston, Michael

Gunasekera, Eva

Heard, Eden

Hospice of Eastern Carolina, Inc.

Hospice Preferred Choice, Inc.

Jones, Andrew A.

Julius, Derek

Larsen, Christian R.

*United States v. GGNSC Administrative Services,* No. 16-13004

Lembke, Matthew Howard

Lewis, London

Long, III, Don Boyden

Manley, Roberta

Marshall, Mary Lester

Martin, Kimberly Bessiere

Micca, Joseph

Mizer, Benjamin C.

Motes, Carrie

Olson, William Edward

Palmetto GBA

Paradies, Debora

Peeples, Lloyd C.

Raab, Michael S.

Reinstein, Noah

Selden, Jack

Smith, Jenny L.

Snow, Holly

Spainhour, Charles F.

Tapie, Carolyn

*United States v. GGNSC Administrative Services,* No. 16-13004

TriCenturion, Inc.

United States of America

United States Department of Health and Human Services, Office of Inspector

General

United States Department of Health and Human Services, Centers for

Medicare and Medicaid Services

Vance, Joyce White

Waldman, Joshua

Walthall, J. Elliott

Ward, Stacy Gerber

Wertkin, Jeffrey

Woodke, Lane

Wright, Abby C.

Yavelberg, Jamie

Yevtukhova, Olga

Zaragoza, Dawn Richardson

No publicly traded corporation has an interest in this suit.

## STATEMENT REGARDING ORAL ARGUMENT

The United States respectfully requests oral argument. Following a seven-week trial, the district court set aside a jury verdict in the government's favor based on an erroneous interpretation of what it means for a claim to be false under the False Claims Act in a medical services case. Suits under the False Claims Act frequently allege that claims are false because a defendant billed the government for services that were medically unnecessary or otherwise ineligible for reimbursement, and the outcome of this case may therefore have broad implications. Because of the voluminous record in this case and the significance of the legal issues presented, the United States believes that oral argument is warranted and would be of substantial assistance to the Court in resolving this appeal.

# TABLE OF CONTENTS

**Page(s)**

STATEMENT REGARDING ORAL ARGUMENT

INTRODUCTION ...............................................................................................1

STATEMENT OF JURISDICTION .................................................................4

STATEMENT OF THE ISSUES.......................................................................4

STATEMENT OF THE CASE ..........................................................................5

      I.      Statutory Background.........................................................5

            A.  The False Claims Act.............................................5

            B.  Medicare hospice payments..................................6

      II.     Facts and Prior Proceedings..........................................9

SUMMARY OF ARGUMENT..........................................................................17

STANDARD OF REVIEW ...............................................................................19

ARGUMENT .......................................................................................................20

      I.      The District Court's Grant of Summary Judgment
           to AseraCare Should Be Reversed.................................20

            A.  The government's evidence demonstrated—at the
               very least—a factual dispute as to whether the claims
               submitted by AseraCare were false....................................21

               1.  Claims for benefits under Medicare are "false" if
                  they are not reimbursable.......................................21

               2.  The evidentiary record demonstrates that a triable
                  fact issue existed as to whether the claims submitted
                  by AseraCare were reimbursable under Medicare..............22

B. The district court's order granting summary judgment to AseraCare was based on a flawed understanding of falsity under the False Claims Act ....................................................28

1. Medicare claims that involve medical judgments can be false under the False Claims Act......................................28

2. The district court conflated the concepts of falsity and scienter..............................................................................32

C. Not only does the government's evidence demonstrate a dispute of fact as to falsity, it also demonstrates a dispute of fact as to whether AseraCare knowingly submitted false claims.........................................................3

II. The Jury was Properly Instructed Under the Correct Legal Standard, and This Court Should Therefore Also Reverse the District Court's Grant of a New Trial ....................................................38

CONCLUSION ..............................................................................................42

CERTIFICATE OF COMPLIANCE WITH FEDERAL

RULE OF APPELLATE PROCEDURE 32(A)(7)

CERTIFICATE OF SERVICE

## TABLE OF CITATIONS

**Cases:**                                                              **Page(s)**

*Allison v. McGhan Med. Corp.,*

   184 F.3d 1300 (11th Cir. 1999) ........................................................29

*Celotex Corp. v. Catrett,*

   477 U.S. 317 (1986) ........................................................................23

*GGNSC Admin. Servs. v. United States ex rel. Debora Paradies,*

   No. 14-90025 (11th Cir. April 14, 2015) ....................................... 13

*Halo Elecs., Inc. v. Pulse Elecs., Inc.,*

   136 S. Ct. 1923 (June 13, 2016) ....................................................33

*Harrison v. Westinghouse Savannah River Co.,*

   176 F.3d 776 (4th Cir. 1999) ................................................... 30, 31

*Hewitt v. B.F. Goodrich Co.,*

   732 F.2d 1554 (11th Cir. 1984) ....................................................20

*Hooper v. Lockheed Martin Corp.,*

   688 F.3d 1037 (9th Cir. 2012) .......................................................31

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund,*

   135 S. Ct. 1318 (2015) .............................................................. 31, 40

---

\* Authorities upon which we chiefly rely are marked with asterisks.

*Rattray v. City of Nat'l City,*

    51 F.3d 793 (9th Cir. 1994) ............................................................23

*Shore v. J.C. Phillips Motor Co.,*

    567 F.2d 1364 (5th Cir. 1978) ........................................................29

*United States v. An Article of Drug Consisting of 4,680 Pails,*

    *More or Less, Each Pail Containing 60 Packets,*

    725 F.2d 976 (5th Cir. 1984) ..........................................................35

*United States v. Calhoon,*

    97 F.3d 518 (11th Cir. 1996) ...................................................21, 38

*United States v. General Motors Corp.,*

    561 F.2d 923 (D.C. Cir. 1977) ........................................................29

*United States v. MacKay,*

    715 F.3d 807 (10th Cir. 2013) ........................................................30

*United States v. Science Applications Int'l Corp.,*

    626 F.3d 1257 (D.C. Cir. 2010) ......................................................34

*United States ex rel. Loughren v. Unum Group,*

    613 F.3d 300 (1st Cir. 2010) ....................................................32, 40

*United States ex rel Oliver v. Parsons, Co.,*

    195 F.3d 457 (9th Cir. 1999) ..........................................................33

*United States ex rel. Phalp v. Lincare Holdings, Inc.,*

    116 F. Supp. 3d 1326 (S.D. Fla. 2015) .............................28, 32, 38

*United States ex rel. Riley v. St. Luke's Episcopal Hosp.,*

    355 F.3d 370 (5th Cir. 2004) ................................................................ 33, 34

*\*United States ex rel. Walker v. R&F Props. of Lake Cty., Inc.,*

    433 F.3d 1349 (11th Cir. 2005) ...........................................18, 21, 28, 30, 38

*Universal Health Servs, Inc. v United States ex rel. Escobar,*

    No. 15-7 (S. Ct. Apr. 19, 2016) ............................................................... 21, 34

*Vessels v. Atlanta Indep. Sch. Sys.,*

    408 F.3d 763 (11th Cir. 2005) ..........................................................................20

*Woodard v. Fanboy,*

    298 F.3d 1261 (11th Cir. 2002) ............................................................... 20, 38

**Statutes:**

28 U.S.C. § 1291 ...............................................................................................4

28 U.S.C. § 1292(b) .........................................................................................13

28 U.S.C. § 1331 ...............................................................................................4

28 U.S.C. § 1345 ...............................................................................................4

31 U.S.C. § 3729 .............................................................................................32

31 U.S.C. § 3729(a)(1)(A) ........................................................................ 6, 21

31 U.S.C. § 3729(b)(1)(A) ................................................................................6

31 U.S.C. § 3730(a) ..........................................................................................6

31 U.S.C. § 3730(b)(1) ......................................................................................6

*\*42 U.S.C. § 1395x ................................................................................... 6, 25

v

42 U.S.C. § 1395x(dd) ........................................................................6

42 U.S.C. § 1395y(a)(1)(c) ..................................................................6

**Regulations:**

42 C.F.R. § 412.3(a) ............................................................................8

42 C.F.R. § 418.3 ........................................................................... 6, 25

42 C.F.R. § 418.20 ..............................................................................7

42 C.F.R. § 418.21 ..............................................................................7

*42 C.F.R. § 418.22 ........................................................................ 7, 8

*42 C.F.R. § 418.22(b)(2) ...................................................21, 25, 39

42 C.F.R. § 418.22(c) ..........................................................................7

42 C.F.R. § 418.24(d) ..........................................................................7

42 C.F.R. § 418.200 ..........................................................................21

42 C.F.R. § 424.22(a)(1) ....................................................................9

**Rules:**

Fed. R. Civ. P. 56...............................................................................23

Fed. R. Evid. 403 ..............................................................................13

Fed. R. Evid. 404(b) ..........................................................................13

**Other Authorities:**

W. Page Keeton et al., *Prosser & Keeton on the Law of Torts,*

    (5th ed.1984).........................................................................30, 31

48 Fed. Reg. 56,008 (Dec. 16, 1983).................................................7

70 Fed. Reg. 70,532 (Nov. 22, 2005) ................................................................ 8, 21

74 Fed. Reg. 39, 384 (Aug. 6, 2009) ................................................................. 8, 21

78 Fed. Reg. 48, 234 (Aug. 7, 2013) .............................................................. 8, 9, 21

79 Fed. Reg. 50,452 (Aug. 22, 2014) ................................................................... 8

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

No. 16-13004

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

v.

GGNSC ADMINISTRATIVE SERVICES, ET AL.,

Defendants-Appellees.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA

BRIEF FOR APPELLANT

## INTRODUCTION

Defendants, known collectively as AseraCare, provide hospice services to Medicare patients and receive reimbursement from the federal government for those services. Hospice care is special end-of-life care for terminally ill patients, which is intended to comfort, not cure. When a terminally ill Medicare patient elects hospice, Medicare stops reimbursement for traditional medical care designed to improve the patient's condition. Only Medicare patients who have a life expectancy of six months or less are considered terminally ill and therefore eligible for Medicare hospice benefits.

Under federal law, hospice providers are responsible for ensuring that the patients they enroll in hospice are eligible to receive hospice benefits under Medicare. Hospice providers are required to maintain physician certifications of terminal illness for each patient and must also ensure that the physician certifications are supported by clinical information in the patient's medical record.

AseraCare's fraud came to the United States' attention when several groups of former AseraCare employees filed separate lawsuits under the False Claims Act. After the United States intervened in the consolidated suits, the district court took a number of procedurally anomalous steps. First, the district court bifurcated the liability phase of the trial, isolating from the rest of the proceedings the question of whether claims submitted by AseraCare were false and significantly limiting the evidence the United States was permitted to present to the jury in this first phase. Second, one week after the jury found that the Medicare claims submitted for a majority of the patients selected for trial were false, the district court invited a new trial motion and vacated the jury's verdict because it believed its jury instructions were erroneous. Third, instead of proceeding with a new trial after the vacatur of the jury verdict, the district court entered summary judgment for AseraCare after giving *sua sponte* notice of its intent to do so.

At the heart of the district court's rulings lies a fundamentally flawed interpretation of what it means for a claim to be "false" under the False Claims Act.

2

In a False Claims Act suit concerning eligibility for payment under Medicare, a claim is false if it is not reimbursable under Medicare. And a hospice claim is only reimbursable under Medicare if the hospice provider has sufficient clinical documentation to support a patient's prognosis of a terminal illness.

The jury therefore properly relied upon the relevant patients' medical records—as elucidated by the competing medical experts—to determine whether AseraCare was entitled to reimbursement under Medicare. The district court incorrectly concluded, however, that because AseraCare presented competing expert testimony as to the interpretation of those medical records, the claims it submitted could not, as a matter of law, be false. In the second phase of the trial, AseraCare would have been free to argue that it had a reasonable, good faith belief that it was entitled to payment. But that argument goes to whether AseraCare *knowingly* submitted false claims to the government and is not relevant to the question of whether the claims submitted by AseraCare were *false*. The district court therefore erred in vacating the jury's verdict and entering summary judgment in favor of AseraCare.

Not only were the district court's orders erroneous, the reasoning underlying them would also seriously impede the government's health care fraud enforcement efforts. Given the ease with which a medical services provider can portray any question of medical necessity or eligibility as one involving a mere disagreement among experts, the district court's ruling gives a green light to unscrupulous health

3

care providers seeking to charge the government for medically unnecessary services.

Nothing in the statute suggests Congress intended to impose such an impediment on

the government's ability to pursue those committing fraud against the United States

or to deprive the jury of its role as factfinder in such cases. The district court's orders

should be reversed.

## STATEMENT OF JURISDICTION

The district court had jurisdiction over the government's False Claims Act suit

under 28 U.S.C. §§ 1331 and 1345. Dkt. 156, ¶ 5 (consolidated complaint). The

district court entered judgment in favor of defendants on March 31, 2016. Dkt. 498.

The government filed a timely notice of appeal on May 27, 2016. Dkt. 503. This Court

has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

In this False Claims Act suit, the government alleges that AseraCare knowingly

submitted false claims to the United States seeking reimbursement under Medicare for

hospice care. The district court divided the liability phase of the trial into two phases:

the first considered whether the claims submitted to the government for patients

within two statistically valid random samples were false; the second would have

considered the remaining issues of False Claims Act liability, including whether the

claims were submitted with the requisite scienter. After a seven-week trial during the

first phase, a jury found that the claims AseraCare submitted for Medicare payment

4

were false for 104 of 121 patients within the statistically valid random samples.

One week after the jury verdict, the district court determined that its jury instructions had been erroneous and granted a new trial. The district court granted a new trial based on its belief that its instructions should have advised the jury that "the FCA requires 'proof of an objective falsehood'" and that "a mere difference of opinion, without more, is not enough to show falsity." Dkt. 482, at 19 (emphasis omitted). After calling for additional briefing, the district court granted summary judgment to AseraCare, concluding that, as a matter of law, the claims submitted by AseraCare were not false because the government had failed to introduce evidence beyond patient medical records and expert testimony interpreting those records. Dkt. 497, at 7.

The issues presented are:

1. Whether the district court erred in granting summary judgment in favor of AseraCare.

2. Whether the district court erred in granting AseraCare a new trial.

## STATEMENT OF THE CASE

### I.    Statutory Background

### A.    The False Claims Act

The False Claims Act (FCA) provides, in relevant part, that "any person who [] knowingly presents, or causes to be presented, a false or fraudulent claim for payment

or approval" is liable to the United States for treble damages and civil penalties. 31 U.S.C. § 3729(a)(1)(A). The statute defines "knowingly" as having "actual knowledge of the information," acting "in deliberate ignorance of the truth or falsity of the information," or acting "in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A).

The Attorney General may bring a civil action to recover treble damages and civil penalties for violations of the FCA. 31 U.S.C. § 3730(a). Alternatively, a private person (a "*qui tam* relator") may bring a civil suit "for the person and for the United States Government." *Id.* at § 3730(b)(1). As was the case here, the United States may intervene in a suit brought by a *qui tam* relator.

### B. Medicare hospice payments

Medicare reimburses a provider for hospice care provided to "terminally ill" individuals that is "reasonable and necessary for the palliation or management of terminal illness." 42 U.S.C. § 1395y(a)(1)(c). Terminally ill individuals are defined as those with a medical prognosis of a life expectancy of six months or less, if the illness runs its normal course. 42 U.S.C. § 1395x; 42 C.F.R. § 418.3. Hospice providers provide palliative care designed to relieve the pain, symptoms, or stress of terminal illness, but not to treat the underlying condition. *See* 42 U.S.C. § 1395x(dd); 42 C.F.R. § 418.3. By electing the Medicare hospice benefit, Medicare patients waive all rights to Medicare payments for curative care and agree to forgo curative treatment for their

6

terminal illnesses. 42 C.F.R. § 418.24(d); *see also* 48 Fed. Reg. 56,008, 56,010 (Dec. 16, 1983).

For a patient to be eligible to elect Medicare hospice benefits, and for a hospice provider to be entitled to bill for such benefits, a patient must be certified as "terminally ill." *See* 42 C.F.R. § 418.20. There are two principal components of that certification, only the second of which is at issue in this case. The certification must (1) be signed by at least one physician, and (2) be accompanied by "clinical information and other documentation that support the medical prognosis" of terminal illness in the medical record. *Id.* at § 418.22. The first component, the physician certification, must be obtained by the hospice provider at the time a patient is admitted to hospice, and again at ninety days, six months, and every sixty days thereafter. *Id.* at §§ 418.21, 418.22. Such physician certifications are provided by a physician working for the hospice provider, except in the case of the admission certification, which may also be certified by the patient's attending physician. *Id.* at § 418.22(c).

The second component requires hospice providers to have medical documentation supporting a prognosis of terminal illness. Although physicians are expected to only prescribe medically necessary services, the documentation requirement provides an important safeguard to ensure the integrity of the Medicare hospice program. Permitting a hospice provider to claim reimbursement for patients

7

who are not terminally ill both undermines the goal of hospice care to provide

palliative care to patients at the end of life and threatens to deprive non-terminally ill

patients of beneficial curative care. *See* 79 Fed. Reg. 50,452, 50,455-56 (Aug. 22, 2014).

For this reason, clinical information in the patient's medical record supporting a life

expectancy of six months or less is a condition of payment for hospice care separate

from and independent of a signed physician certification. 42 C.F.R. § 418.22; *see also*

79 Fed. Reg. at 50,470 ("A hospice is required to make certain that the physician's

clinical judgment can be supported by clinical information and other documentation

that provide a basis for the certification of 6 months or less if the illness runs its

normal course."); 78 Fed. Reg. 48,234, 48,245 (Aug. 7, 2013) ("[C]ertifications and

recertifications of hospice eligibility are statutory requirements for coverage and

payment" and must include "[c]linical information and other documentation that

support the medical prognosis"); 74 Fed. Reg. 39,384, 39,398 (Aug. 6, 2009) ("The

medical record must include documentation that supports the terminal prognosis.");

70 Fed. Reg. 70,532, 70,534-35 (Nov. 22, 2005) ("A signed certification, absent a

medically sound basis that supports the clinical judgment, is not sufficient for

application of the hospice benefit under Medicare.").[1]

---

[1] The requirement that a physician's certification be supported by clinical
documentation is not unique to the Medicare hospice benefit. Many other Medicare
benefits involving physician orders or certifications of medical necessity require
supporting medical documentation. *See, e.g.*, 42 C.F.R. § 412.3(a) ("[A] physician order

8

The Centers for Medicare and Medicaid Services (CMS) contract with Medicare Administrative Contractors, formerly known as "fiscal intermediaries," to review, approve, and pay Medicare claims submitted by health care providers. Palmetto GBA is the Medicare Administrative Contractor responsible for processing AseraCare's hospice claims. Published medical guidelines, including "local coverage determinations" issued by Palmetto GBA, are intended to be used by hospice providers to determine whether a patient, based on his or her diagnoses and current health condition, has a life expectancy of six months or less. *See* 78 Fed. Reg. 48,234, 48,247 (Aug. 7, 2013). Local coverage determinations also identify the types of clinical information that, if documented in the medical record, would support a life expectancy of six months or less. *See, e.g.,* Dkt. 493-1, at 4-6.

## II.    Facts and Prior Proceedings

A. Defendants are three corporate entities involved in providing hospice care to Medicare beneficiaries and submitting claims for payment to Medicare. Hospice Preferred Choice, Inc., and Hospice of Eastern Carolina, Inc., doing business as AseraCare, are subsidiaries of HomeCare Preferred Choice, Inc., which is, in turn, a subsidiary of Golden Gate Ancillary LLC, a subsidiary of GGNSC Holdings, LLC.

---

must be present in the medical record and be supported by the physician admission and progress notes, in order for the hospital to be paid for hospital inpatient services under Medicare Part A."); 42 C.F.R. § 424.22(a)(1) ("[The] patient's medical record … must support [physician's] certification of eligibility" for home health services.).

9

The third defendant is GGNSC Administrative Services LLC, which has an administrative service agreement with HomeCare Preferred Choice, Inc., and performs billing services on behalf of AseraCare. Dkt. 156, ¶¶ 9-10. These entities will be referred to in this brief collectively as "AseraCare."

Details of AseraCare's fraud were initially brought to the United States' attention through *qui tam* lawsuits filed by former AseraCare employees. Following an investigation, the United States intervened in the False Claims Act suits against AseraCare. Dkt. 156.

The United States' consolidated complaint alleges that AseraCare violated the False Claims Act by knowingly submitting false claims to Medicare.[2] Specifically, AseraCare implemented high-pressure management and sales techniques that led its nurses and clinical staff to admit and retain patients in hospice care who were not eligible for hospice benefits because they were not "terminally ill." Dkt. 156, at ¶¶ 39, 41, 44-46. Despite warnings from AseraCare's own auditors and staff that AseraCare was admitting and retaining patients who were not eligible for Medicare hospice benefits, AseraCare continued with business as usual, and repeatedly submitted false claims to Medicare. *See, e.g., id.* at ¶¶ 39, 41, 44-46, 55, 58-64.

To prove AseraCare's systematic submission of false claims, the United States

---

[2] The complaint further alleged several common law causes of action. *See* Dkt. 156, at ¶¶ 84-90 (alleging payment under mistake of fact and unjust enrichment claims).

conducted a statistical analysis of approximately 2,180 AseraCare patients for whom AseraCare had billed Medicare for at least 365 continuous days of hospice care. The government's medical expert, Dr. Solomon Liao, a professor at the University of California-Irvine School of Medicine and a prominent physician in hospice and palliative medicine, geriatric care, and elder mistreatment, reviewed the medical records of a statistically valid sample of 233 of these patients and identified 123 patients who were not eligible for hospice care benefits under Medicare. Dkt. 251, at 21-22; Dkt. 317, at 2. The medical records of these patients contained facts about the patients' conditions that, viewed in light of the applicable medical guidelines, demonstrated that they were not eligible for hospice services because they did not have a life expectancy of six months or less. *See generally* Dkt. 493-1 (providing summary of medical records for each patient and demonstrating why the patient was ineligible for hospice services).

The government obtained further evidence of AseraCare's fraudulent business practices through deposition testimony, documents, and witness declarations. That evidence revealed that AseraCare set aggressive admissions and profit goals for its agencies and used tactics such as monetary incentives, reprimands, and terminations to pressure its employees to meet those goals, without regard to whether the patients admitted were eligible for Medicare hospice benefits. *See* Dkt. 251, at 44. The evidence demonstrated that certifying physicians primarily relied on AseraCare nursing staff

11

and other AseraCare employees' observations about patients when certifying a patient as eligible for hospice. *Id.* at 71-73. And physician certifications were obtained even when AseraCare nurses were concerned about a patient's eligibility or when the physician was provided erroneous or incomplete information. *See, e.g., id.* at 54, 76. The evidence further showed that AseraCare was fully aware of the problems caused by its aggressive sales tactics and lack of physician oversight. As the government explained to the district court, "[i]nternal and external auditors repeatedly informed AseraCare executives that it was submitting false claims to Medicare for ineligible patients but AseraCare failed to act upon the audit findings year after year." *Id.* at 44.

B. The parties cross-moved for summary judgment.[3] AseraCare argued in its motion that to prove falsity under the FCA the government was required to show that certifying physicians did not or reasonably could not believe that the patients for whom they were submitting claims were eligible for Medicare hospice benefits. *See* Dkt. 225.

The district court denied AseraCare's motion for summary judgment holding that "Dr. Liao's testimony creates issues of material fact regarding whether clinical information and other documentation in the medical record support the certifications of terminal illness, a pre-requisite for payment of a Medicare Hospice Benefit claim."

---

[3] The United States moved only for partial summary judgment, which was granted as to the AseraCare's statute of limitations defenses. Dkt. 269.

Dkt. 268, at 15. Following this ruling, AseraCare moved for a certification under 28 U.S.C. § 1292(b) on the question of whether the government was required to show that "no reasonable physician" could have believed that the patients were eligible for hospice. Dkt. 277, at 4. The district court granted the motion over the government's objection, but this Court denied AseraCare's subsequent petition for permission to pursue an interlocutory appeal. *See GGNSC Admin. Servs. v. United States ex rel. Debora Paradies*, No. 14-90025 (11th Cir. April 14, 2015).

Following the district court's statement that it was inclined to bifurcate the liability phase of the trial, *see* Pretrial Conference Tr. 59, 68 (Dec. 11, 2014), AseraCare filed a motion asking the court to bifurcate the trial into two phases: the first would determine whether the claims submitted for the sample patients were false, and the second would determine the remaining elements of liability and damages, including whether AseraCare knew the claims were false. Dkt. 288. Over the government's objection, the district court adopted this approach, expressing a concern that the government's scienter evidence would be unfairly prejudicial to AseraCare. Dkt. 298, at 3-5.

Significant disputes regarding what evidence would be admissible during the first phase of the trial followed. Ultimately, the district court excluded or limited much of the United States' evidence of AseraCare's corporate practices under Federal Rules of Evidence 403 and 404(b), including evidence of AseraCare's admissions and

13

recertification practices, and external and internal audit reports documenting AseraCare's failure to ensure that patients were eligible for Medicare hospice. *See* Dkt. 432.

C. The trial lasted seven weeks. The government's evidence consisted primarily of the medical records of the patients selected for trial and the expert testimony of Dr. Liao explaining the medical records and the conclusions about the patients' prognoses to be drawn from those records. Dkt. 482, at 11; Trial Tr. 1343-3490 (testimony of Dr. Liao) (Aug. 18-Sept. 2, 2015), Dkt. 517-25. The government was also permitted to present limited testimony from nine former AseraCare nurses and other employees who testified that AseraCare admitted patients the employees did not think were eligible for hospice care and that, as a general practice, medical directors were not properly involved in the certification and recertification of patients. *See* Dkt. 482, at 11. The defense presented competing testimony from its own medical experts. *See, e.g.*, Trial Tr. 4097-5837 (testimony of Dr. Gail Cooney) (Sept. 9-23, 2015), Dkt. 528-36; Trial Tr. 5838-6324 (testimony of Dr. Terry Melvin) (Sept. 23-28, 2015), Dkt. 536-38.

The jury returned a verdict in favor of the government, finding that AseraCare submitted false claims as to 104 of the 121 patients.[4] Dkt. 465.

---

[4] During the trial, before the jury began its deliberations, the district court granted judgment as a matter of law as to two patients. Dkt. 483. In granting a new

D. One week after the jury verdict, the district court convened the parties and stated that it believed its jury instructions had been improper. After inviting suggestions from the parties on how to proceed, the district court granted AseraCare's oral motion for a new trial. Trial Tr. 7308-14 (Oct. 23, 2015), Dkt. 549; Dkt. 483. In its decision, the court stated that it believed it had "committed reversible error in failing to provide the jury with complete instructions." Dkt. 482, at 2. The court believed that its instructions should have advised the jury that "the FCA requires 'proof of an objective falsehood'" and that "a mere difference of opinion, *without more*, is not enough to show falsity." *Id.* at 19.

The court also explained that it "now question[ed] whether the Government, under the correct legal standard, has sufficient admissible evidence of more than just a difference of opinion to show that the claims at issue are objectively false as a matter of law." Dkt. 482, at 21. The court therefore held that it would *sua sponte* consider granting AseraCare summary judgment and ordered additional briefing by the parties. Dkt. 483.

In opposing the court's *sua sponte* proposal of summary judgment, the government explained that "the proper legal standard for falsity in this case is whether

---

trial, the district court vacated its prior order granting judgment as a matter of law as to those two patients. Dkt. 482. When the district court granted summary judgment to AseraCare after trial, it granted summary judgment as to all 123 patients. Dkt. 497, at 7.

15

clinical information and other documentation in the medical record support the

certifications of terminal illness." Dkt. 493, at 3. The government further explained

that it had submitted sufficient evidence to demonstrate falsity under this standard in

the form of patient medical records, expert interpretation of those records, and

evidence that the signed physician certifications in the record were unreliable. *Id.* at 3.

Although not relevant to the question of whether the claims submitted by AseraCare

were false, the government also pointed out that "[s]ignificant admissible evidence

exists," to dispel the notion that AseraCare's claims were the product of a reasonable,

good faith difference of opinion. *Id.* at 6, 26-29.

In its order granting summary judgment in favor of AseraCare, the district

court began by expressing the view that "this case boils down to conflicting views of

physicians about whether the medical records support AseraCare's certifications that

the patients at issue were eligible for hospice care." Dkt. 497, at 1. The court stated

that "[w]hen hospice certifying physicians and medical experts look at the very *same*

medical records and disagree about whether the medical records support hospice

eligibility, the opinion of one medical expert *alone* cannot prove falsity without further

evidence of an objective falsehood." *Id.* at 1-2. Reasoning that "[t]he Government

does not challenge that each claim for each patient at issue had an accompanying

[certificate] with the valid signature of the certifying physician," or present evidence

that those certifying physicians relied on false or misleading information, *id.* at 6, the

16

court held that the government failed to demonstrate the existence of a genuine factual dispute as to whether the claims were false under the False Claims Act. *Id.* at 7.

## SUMMARY OF ARGUMENT

The district court adopted a highly anomalous approach to the trial of this False Claims Act suit. Instead of allowing the jury to determine whether AseraCare knowingly submitted false claims for payment, the court bifurcated the liability phase of the proceedings and purported to separate the issue of whether the claims were false from the issue of whether AseraCare knowingly submitted false claims. Notwithstanding this artificially constrained trial process, the government persuaded the jury—on the basis of expert testimony, documentary evidence, and limited evidence of AseraCare's corporate practices—that AseraCare submitted false claims to Medicare on behalf of patients who were not terminally ill.

But the jury's verdict was short-lived. Based on a fundamentally flawed understanding of what it means for a claim to be false under the False Claims Act— an understanding that conflates falsity with scienter—the district court held that its jury instructions had been erroneous. The court then invited—and granted—a new trial motion just one week after the jury's decision. Shortly thereafter, the district court compounded its legal error by *sua sponte* proposing, and then granting, summary judgment in favor of AseraCare.

17

Underlying both the district court's new trial order and its summary judgment order is an erroneous belief that this case involves a mere disagreement among physicians over a patient's prognosis and that medical judgments cannot be false under the False Claims Act. But, as this Court has explained, "Medicare claims may be false if they claim reimbursement for services or costs that either are not reimbursable or were not rendered as claimed." *United States ex rel. Walker v. R&F Props. of Lake Cty., Inc.*, 433 F.3d 1349, 1356 (11th Cir. 2005). In order for a hospice provider's claims to Medicare to be reimbursable, the patient must be certified as terminally ill, and that certification must be accompanied by clinical information and other documentation in the medical record that support a prognosis of a life expectancy of six months or less. The question whether a patient's medical records support a prognosis of terminal illness is a question of fact which a jury can, and in this case did, determine based on an examination of each patient's medical records and expert medical testimony about the conclusions to be drawn from those records. Even if there were evidence in this case of a good faith disagreement regarding a patient's eligibility for Medicare hospice services, such evidence would be relevant only to the question of whether defendants *knowingly* submitted false claims to the government. Such evidence would not be relevant to whether the claims themselves were not reimbursable and therefore false.

Application of the proper legal standard leads to the conclusion that the district court's grant of summary judgment was erroneous and should be reversed. Ample

18

record evidence presented during trial demonstrated that AseraCare submitted claims for Medicare payments that were not reimbursable. Although the government was prepared to present additional evidence in the second phase of the trial to prove AseraCare acted with the scienter required under the False Claims Act, no additional evidence was required for the government to prove that AseraCare's claims for payment under Medicare were false.

Applying the correct legal standard, it is likewise clear that the district court's order granting a new trial should be reversed. The jury instructions in this case reflected a proper understanding of falsity under the False Claims Act. The jury was instructed that "[c]laims to Medicare may be false if the provider seeks payment, or reimbursement, for health care that is not reimbursable. For a hospice provider's claims to Medicare to be reimbursable, the patient must be eligible for the Medicare hospice benefit." Dkt. 440, at 11. To find a hospice claim ineligible, and therefore false, the jury was properly instructed to determine whether "documentation support[s] the medical prognosis" that the patient has a life expectancy of six months or less. Dkt. 440, at 12. Guided by these instructions, the jury properly found that the claims at issue in this case were false as to 104 of the 121 patients selected for trial.

## STANDARD OF REVIEW

This Court reviews the district court's grant of summary judgment de novo, "viewing all the evidence, and drawing all reasonable inferences" in favor of the non-

19

moving party. *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 767 (11th Cir. 2005). Summary judgment is only proper if there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. *Id.*

This Court reviews a district court ruling on a motion for a new trial for abuse of discretion. *Hewitt v. B.F. Goodrich Co.*, 732 F.2d 1554, 1556 (11th Cir. 1984). "Legal error is an abuse of discretion." *Woodard v. Fanboy*, 298 F.3d 1261, 1268 n.14 (11th Cir. 2002). When the district court *grants* a motion for a new trial, this Court's "review is broader and requires a stringent application of the same standard." *Hewitt*, 732 F.2d at 1556. This Court has explained that "[t]his is because when the jury verdict is set aside usual deference to the trial judge conflicts with deference to the jury on questions of fact." *Id.*

## ARGUMENT

### I.   The District Court's Grant of Summary Judgment to AseraCare Should Be Reversed.

Applying an erroneous theory of falsity under the False Claims Act, the district court granted summary judgment to AseraCare, concluding that the United States had not presented sufficient evidence to create a triable issue of fact as to the falsity of the claims submitted by AseraCare for payment under Medicare. The district court incorrectly held that the existence of competing expert testimony regarding whether the claims submitted by AseraCare were reimbursable under Medicare precluded a

jury finding that the claims were false. This Court should reverse the district court's

order granting summary judgment to AseraCare.

**A.** **The government's evidence demonstrated—at the very least—a factual dispute as to whether the claims submitted by AseraCare were false.**

**1.** **Claims for benefits under Medicare are "false" if they are not reimbursable.**

The False Claims Act imposes civil liability on "any person who . . . knowingly

presents, or causes to be presented, a false or fraudulent claim for payment or

approval." 31 U.S.C. § 3729(a)(1)(A); *Universal Health Servs, Inc. v United States ex rel.*

*Escobar*, No. 15-7, slip op. 8 (S. Ct. Apr. 19, 2016). As this Court has explained,

"Medicare claims may be false if they claim reimbursement for services or costs that

either are not reimbursable or were not rendered as claimed." *United States ex rel.*

*Walker v. R&F Props. of Lake Cty., Inc.*, 433 F.3d 1349, 1356 (11th Cir. 2005); *see also*

*United States v. Calhoon*, 97 F.3d 518 (11th Cir. 1996).

Even if a hospice provider obtains a certification of terminal illness signed by a

physician, the provider's claim is not reimbursable by Medicare if the medical record

does not contain "[c]linical information and other documentation that support the

medical prognosis" of a life expectancy of six months or less. 42 C.F.R. § 418.200; 42

C.F.R. § 418.22(b)(2); *see also, e.g.*, 78 Fed. Reg. 48,234, 48,245 (Aug. 7, 2013); 74 Fed.

Reg. 39,384, 39,398 (Aug. 6, 2009); 70 Fed. Reg. 70,532, 70,534-35 (Nov. 22, 2005)

("A signed certification, absent a medically sound basis that supports the clinical

judgment, is not sufficient for application of the hospice benefit under Medicare."); *See* Trial Tr. 3587:11-18 (Sept. 3, 2015), Dkt. 526 (testimony of K. Lucas, CMS representative) ("It's not simply enough for the physician to sign and state that. There has to be a basis for that. There has to be a sound basis and it has to be supported by the information that's in the clinical record.").

Whether the claims submitted by AseraCare were false therefore turns on "whether clinical information and other documentation in the medical record support the certifications of terminal illness, a pre-requisite for payment of a Medicare Hospice Benefit claim," as the district court recognized in its initial order on summary judgment. Dkt. No. 268, at 15. No Medicare rule or guidance supports the district court's later view that hospice claims are payable so long as a reasonable physician could have believed the patient was terminally ill. The only question relevant to whether the claims AseraCare submitted were false is whether the patient was "terminally ill" as certified by a physician and supported by appropriate medical documentation.

### 2. The evidentiary record demonstrates that a triable fact issue existed as to whether the claims submitted by AseraCare were reimbursable under Medicare.

Medicare claims are false under the False Claims Act if they seek payment for services that are not reimbursable under Medicare, and claims for hospice care are only reimbursable under Medicare in the presence of a physician certification

22

supported by documentation in a patient's medical record. Under this correct legal standard, the government presented ample evidence during phase one of the trial that the claims submitted by AseraCare were false. Indeed, the best support for such a conclusion is the fact that a jury, presented with the government's evidence, found that AseraCare submitted false claims as to 104 of the 121 patients selected for trial. At the very least, as required at the summary judgment stage, the evidence submitted by the government demonstrates the existence of genuine disputes of material fact on the question. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56.[5]

a. The government's opposition to the district court's notice that it would *sua sponte* consider summary judgment contained detailed summaries of the medical records admitted into evidence for each patient selected for trial. Those medical records contain facts about the patients' conditions, which the jury properly evaluated in determining whether AseraCare's claims for those patients were false. *See* Dkt. 493-1, at 14-270 (describing evidence drawn from medical records). For example, among the 104 patients for whom the jury found that AseraCare submitted false claims were Ralph S., Samuel T., and William T. *See* Dkt. 465, at 8-9. Rather than reflecting end-

---

[5] If this Court orders a new trial (or the district court so orders on remand), the government reserves the right to argue again that the bifurcation order was flawed. *See, e.g.*, *Rattray v. City of Nat'l City*, 51 F.3d 793 (9th Cir. 1994) (example of court upholding grant of new trial but reversing subsequent grant of summary judgment). As the government explained to the district court, as a practical matter, the better course is to consider falsity and scienter in the same phase of the trial.

stage Alzheimer's disease, AseraCare's medical records for Alzheimer's patient Ralph S. repeatedly document that Ralph S. was verbal and conversant with staff during the nearly two years he was receiving hospice services from May 2007 through March 2009, before he revoked hospice to seek treatment. *See* Dkt. 493-1, at 223-26. For example, in June 2007, Ralph S. informed a social worker that he "slept just fine last night," and responded, "No. She must have forgotten," when asked if his daughter had visited the previous night. *Id.* at 223, ¶ 885. Over a year later, in May 2008, Ralph S. was engaged in active conversation with a social worker responding, "Well, that sounds about right," when she answered one of his questions, and commenting, "Should be about lunchtime soon." *Id.* at 224-25, ¶ 890.

Indeed, some of the medical records the government presented to the jury contain physician notations indicating that patients—including Samuel T. and William T., both of whom eventually left hospice care—were *not* eligible for hospice. *See, e.g.*, Dkt. 493-1, at 238, ¶ 939 ("I do not feel that he would meet hospice criteria. I feel that [Samuel T.] should be [discharged] from Hospice."); *id.* at 261-62, ¶ 1037 ("[T]here has been no clear evidence of decline [in William T.'s condition] for a long time"). The evidence presented in the government's opposition thus more than sufficed to demonstrate that there was a factual dispute as to whether "[c]linical information and other documentation" in the medical record "support[ed] the

medical prognosis" of a life expectancy of six months or less. 42 C.F.R.

§ 418.22(b)(2); 42 U.S.C. § 1395x; 42 C.F.R. § 418.3.

In addition to the evidence presented in the government's opposition to summary judgment, trial testimony from the government's medical expert, Dr. Liao, also demonstrated the existence of factual disputes sufficient to preclude summary judgment. Dr. Liao's testimony was designed to assist the jury in understanding the medical records entered into evidence. *See* Trial Tr. 1343-3490 (testimony of Dr. Liao) (Aug. 18-Sept. 2, 2015), Dkt. 517-25. Appropriately, Dr. Liao did not opine on the circumstances under which AseraCare's physicians certified patients as terminally ill, as he had no personal knowledge of AseraCare's practices. Trial Tr. 3426:24-3427:8 (Sept. 2, 2015), Dkt. 525. Instead, testifying as a medical expert, Dr. Liao explained, based on patient medical records and applicable medical guidelines, why the AseraCare patients selected for trial were not eligible for hospice care under Medicare. Over three weeks of testimony, Dr. Liao explained for each patient, including Ralph S., Samuel T., and William T., discussed above, his conclusion that the patient was not terminally ill based on the clinical information contained in AseraCare's medical records. The testimony of Dr. Liao—coupled with the extensive medical records upon which he relied—further underscored the existence, at the very least, of a factual dispute as to whether the claims submitted by AseraCare were false.

25

b. Although patient medical records and the government's expert testimony would have been sufficient to create triable issues of fact on whether the claims AseraCare submitted to Medicare were reimbursable, the government presented additional testimony from nine AseraCare employees, which served to further undermine the reliability of the physician certifications upon which Aseracare relied. For example, Vicki Stutts, the former Director of Clinical Services for AseraCare's agency in Decatur, Alabama, testified that she did not provide the AseraCare physician with any clinical information when bringing him certifications to sign, testifying that "No. Typically we just gave him, usually, a stack of papers to sign, he just signed the papers." Trial Tr. 596:18-22 (Aug. 11, 2015), Dkt. 514; *see also* Trial Tr. 470-71 (Aug. 10, 2015), Dkt. 513 (testimony of nurse Dawn Zaragoza) ("We would take the paperwork to [an AseraCare physician] to her office to have her sign. . . . She would peel the stickies off and sign in the yellow highlighted area."); *id.* at 476, 478 ("There was one time that we had to take the papers to his [another AseraCare physician's] house. . . . Q: Did he ask questions about patients before he signed their certificate of terminal illness? A: No, sir. . . . He would nod off, while he was signing even, yeah."). Ms. Manley, a former AseraCare nurse and currently a nursing professor and a registered nurse for 39 years, testified that at patient progress meetings one of her tasks was to set up the physician's "sketch pad, his crayons and his coloring

26

pencils. . . . While the patients were being discussed . . . he was doing his drawings . . . . They were mostly abstract art." Trial Tr. 1130 (Aug. 17, 2015), Dkt. 516.

There was also ample testimony that admissions employees were pressured to admit ineligible patients. For example, Vicki Stutts, the former Director of Clinical Services for AseraCare's agency in Decatur, Alabama, testified that when she declined to admit ineligible patients to hospice, she was instructed "to go back to the chart and just find whatever I needed to find to admit the patient." Trial Tr. 597:6-21 (Aug. 11, 2015), Dkt. 514. Ms. Greer, an AseraCare nurse case manager, testified that when she would notify her supervisors that a patient was not admissible for hospice care, she would be instructed to "go back and dig deeper and look harder. . . . [to] [c]reate a reason because there was none there." Trial Tr. 1023 (Aug. 12, 2015), Dkt. 515. Ms. Paradies, an admissions nurse, further testified, "Q: Did you understand that you were supposed to exercise your clinical judgment at that time period? A: I was instructed to admit." Trial Tr. 1070 (Aug. 12, 2015), Dkt. 515.

Testimony from these witnesses allowed the jury to understand the context in which AseraCare's claims were submitted to Medicare and to place the appropriate weight on the evidence presented, including the physician certifications on which AseraCare relied to show the purported eligibility of its hospice patients. And such evidence underscores the district court's error in concluding that no genuine factual disputes existed.

27

**B.    The district court's order granting summary judgment to AseraCare was based on a flawed understanding of falsity under the False Claims Act.**

**1.    Medicare claims that involve medical judgments can be false under the False Claims Act.**

At the heart of the district court's order granting summary judgment for AseraCare is its erroneous determination that "'[e]xpressions of opinion, scientific judgments, or statements as to conclusions about which reasonable minds may differ cannot be false.'" Dkt. 497, at 2 (quoting *United States ex rel. Phalp v. Lincare Holdings, Inc.*, 116 F. Supp. 3d 1326, 1360 (S.D. Fla. 2015)). Proceeding from this faulty premise, the court incorrectly concluded that "[w]hen hospice certifying physicians and medical experts look at the very *same* medical records and disagree about whether the medical records support hospice eligibility, the opinion of one medical expert *alone* cannot prove falsity without further evidence of an objective falsehood." Dkt. 497, at 1-2.

The district court misapprehended the governing law. As this Court held in *Walker*, Medicare claims are false if they claim payment for services that are not reimbursable, and such claims often involve medical judgments. 433 F.3d at 1356. The existence of competing expert testimony as to whether a Medicare claim is reimbursable does not mean the standard is incapable of objective evaluation and application. The jury in this case was fully capable of evaluating, with the aid of expert testimony, whether the medical records of the patients selected for trial supported

28

AseraCare's claims for payment. *See Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1321 (11th Cir. 1999) ("[E]valuating witness credibility and weight of the evidence [is] the ageless role of the jury"); *Shore v. J.C. Phillips Motor Co.*, 567 F.2d 1364, 1366 (5th Cir. 1978) ("Where there is evidence of such quality and weight that reasonable men in the exercise of impartial judgment might reach different conclusions, the case must go to the jury. . . . [I]t is the function of the jury as finders of fact, and not the Court, to weigh conflicting evidence and inferences, and to determine the credibility of witnesses.").

Indeed, juries are frequently called upon to evaluate competing claims made by medical experts. For example, in medical malpractice suits, juries may be called upon to determine which of two experts is more credible regarding whether the defendant complied with the standard of care. Those questions may be difficult, and there may be False Claims Act cases where the jury finds that the government has failed to meet its burden of proof. But that does not mean such determinations are categorically out of bounds for a jury. Taken to its logical conclusion, the district court's reasoning would require dismissal of a medical malpractice suit any time a defendant is able to obtain an expert to support its position. This is clearly not the law. *See United States v. General Motors Corp.,* 561 F.2d 923, 933 (D.C. Cir. 1977) ("The mere fact that experts disagree does not mean that the party with the burden of proof loses. The finder of fact has to make the effort to decide which side has the stronger case."); *see also United*

*States v. MacKay*, 715 F.3d 807, 827 (10th Cir. 2013) ("To be sure, the jury heard conflicting evidence as to whether Defendant prescribed [the medications] outside the usual course of medical practice and not for a legitimate medical purpose. But conflicting evidence does not per se create a reasonable doubt. Where the evidence conflicts, we accept the jury's resolution of conflicting evidence and its assessment of the credibility of witnesses.") (quotation marks omitted).

In concluding that medical judgments about which reasonable minds can disagree can never be false, the district court ignored this Court's decision in *Walker*, 433 F.3d at 1356, and usurped the role of the jury. The Court in *Walker* rejected a defendant's argument that because a regulatory requirement was ambiguous (and therefore reasonable minds could disagree over its interpretation), the government could not demonstrate the existence of any false claims. *Id.* at 1357. This Court held instead that the relator could present evidence demonstrating that existing guidance contained the agency's interpretation and that a triable issue of fact therefore existed as to the falsity of the Medicare provider's billing. *Id.* at 1358. That reasonable minds could disagree about whether or not the claim was eligible for payment did not automatically defeat liability under the FCA.

The fact that the definition of "terminal illness" contains a judgment regarding a patient's future health does not undermine the jury's verdict. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 792 (4th Cir. 1999) (quoting W. Page

30

Keeton, et al., *Prosser & Keeton on the Law of Torts* § 109, at 760 (5th ed.1984)); *see also Hooper v. Lockheed Martin Corp.*, 688 F.3d 1037, 1047-49 (9th Cir. 2012) (holding that an estimate can be "false" under the False Claims Act). Eligibility depends on the usual course of a patient's illness, as documented by the patient's medical record, not on whether the patient in fact lives for six months or less. Many hospice patients no doubt live longer than predicted, and that alone is not a basis for liability.[6] Rather, the appropriate question for the jury to resolve is whether the prognosis of terminal illness was supported by the patient's clinical condition as documented in the patient's medical records.

Moreover, even if eligibility were properly characterized as an opinion, as the district court believed, liability could still attach under the False Claims Act. Nothing in the False Claims Act limits liability to "objective falsehoods," and it is well-accepted that opinions can be actionable as false statements if the speaker lacks facts to support the opinion. *See Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 135 S. Ct. 1318, 1323, 1326-27 (2015) (in a case arising under the Securities Act of 1933, the Supreme Court held that a statement of an opinion can be an untrue statement of material fact if the opinion did not reflect the speaker's actual belief). As the First Circuit has explained, even if "an allegedly false statement constitutes the speaker's

---

[6] Accounting for this fact, the government conservatively drew its patient samples only from the universe of AseraCare patients who had remained on hospice care for at least 365 days or more.

31

opinion," it still "may qualify as a false statement for purposes of the FCA where the speaker knows facts which would preclude such an opinion." *United States ex rel. Loughren v. Unum Group*, 613 F.3d 300, 310-12 (1st Cir. 2010) (quotation marks omitted).

### 2. The district court conflated the concepts of falsity and scienter.

Ultimately, the district court's error in this case can be traced to a conflation of the concepts of falsity and scienter—confusing the question of whether a claim was "false" with the question of whether the claim was "knowingly. . . false." 31 U.S.C. § 3729. Although the district court purported to separate the question of whether the claims submitted by AseraCare were false from the question of whether the falsity was "knowing," its order granting summary judgment demonstrated an unwillingness to actually do so, and in the process underscored the unworkability of its earlier bifurcation order.

The district court believed that "'[e]xpressions of opinion, scientific judgments, or statements as to conclusions about which reasonable minds may differ cannot be false.'" Dkt. 497, at 2 (quoting *United States ex rel. Phalp v. Lincare Holdings, Inc.*, 116 F. Supp. 3d 1326, 1360 (S.D. Fla. 2015)). But whether reasonable minds might have a good faith disagreement as to whether AseraCare's physician certifications were supported by medical documentation is a question that goes to whether AseraCare

32

*knowingly* submitted false claims to Medicare, not whether those claims were false.[7] *See United States ex rel. Oliver v. Parsons, Co.*, 195 F.3d 457, 464 (9th Cir. 1999) ("A contractor relying on a good faith interpretation of a regulation is not subject to liability, not because his or her interpretation was correct or 'reasonable' but because the good faith nature of his or her action forecloses the possibility that the scienter requirement is met.").

The Fifth Circuit's decision in *United States ex rel. Riley v. St. Luke's Episcopal Hospital* provides no support to the district court's conclusion. The court of appeals in that case explained that although it agreed in principle with the lower court that expressions of opinion or scientific judgments about which reasonable minds may differ cannot be "false," it specifically noted that this principle requires a reviewing court to undertake a scienter analysis: "We agree in principle with the district court and accept that the FCA requires a statement *known to be false*, which means a lie is actionable but not an error." 355 F.3d 370, 376 (5th Cir. 2004) (emphasis added). Most significantly, the Fifth Circuit held that "claims for medically unnecessary

---

[7] Although the existence of a reasonable difference of opinion may provide a defense as to the question of whether the defendant acted with the requisite scienter for liability under the False Claims Act, if the defendant believes that a claim submitted is false, the government need not prove that such a belief was objectively unreasonable. *Cf. Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1933 (June 13, 2016) (rejecting the Federal Circuit's requirement that objective recklessness be proven for an award of enhanced patent damages as "culpability is generally measured against the knowledge of the actor at the time of the challenged conduct").

treatment are actionable under the FCA," and reversed the district court's dismissal of relator's claims based upon a finding that "Riley's complaint does sufficiently allege that statements were known to be false, rather than just erroneous, because she asserts that Defendants ordered the services knowing they were unnecessary." 355 F.3d at 376.

The district court was apparently concerned that False Claims Act liability might attach even if a certifying physician acted reasonably in believing that a patient was eligible for hospice services. But that concern is not properly addressed by altering the definition of what makes a claim "false" under the FCA. As the Supreme Court recently explained, there is no need to "adopt[] a circumscribed view of what it means for a claim to be false or fraudulent," because "concerns about fair notice and open-ended liability 'can be effectively addressed through strict enforcement of the Act's materiality and scienter requirements.'" *Universal Health Servs., Inc. v United States ex rel Escobar*, No. 15-7, slip op. 13-14 (S. Ct. Apr. 19, 2016) (quoting *United States v. Science Applications Int'l Corp.*, 626 F.3d 1257, 1270 (D.C. Cir. 2010)). AseraCare would have had the opportunity in the second phase of the case to argue that any false claims were not "knowing" because AseraCare acted in good faith. But it was error for the court to presume such proof in advance and, on that basis, hold that the claims AseraCare submitted to the federal government were not false.

34

### C.    Not only does the government's evidence demonstrate a dispute of fact as to falsity, it also demonstrates a dispute of fact as to whether AseraCare knowingly submitted false claims.

Having set aside the jury verdict, granted a new trial, and proceeded to summary judgment—a "rather unusual procedural posture," *United States v. An Article of Drug Consisting of 4,680 Pails, More or Less, Each Pail Containing 60 Packets*, 725 F.2d 976, 989 (5th Cir. 1984)—the district court should have considered all relevant, admissible evidence to determine whether triable fact issues remained. As explained above, and as necessary to resolve this appeal, triable disputes of fact exist as to whether the claims AseraCare submitted to Medicare were false. In addition, the government's evidence went the further step of demonstrating that genuine disputes of fact exist as to whether AseraCare possessed a reasonable, good faith belief that its patients were eligible for hospice care and that its medical documentation sufficiently supported that belief.

As the government explained to the district court in the post-trial summary judgment briefing, "[s]ignificant admissible evidence exists that had not yet been presented at trial due to the Court's bifurcation order." Doc 493, at 6. In excluding much of the government's non-medical expert testimony from the trial record, the court recognized that such evidence might provide evidence of "motive" or "knowledge" in the second phase of the trial. Dkt. 432, at 6, 11. As explained, it was fundamentally unfair for the court to bifurcate the trial on the issues of falsity and

knowledge—and to preclude the government from introducing critical evidence of knowledge during the falsity phase—and then conclude that the evidence during that phase failed to show anything more than a good faith disagreement and that AseraCare's claims were therefore not false. When the additional evidence that the court excluded from the phase one proceeding is considered, there is unquestionably a dispute of fact as to whether AseraCare had a good faith belief that its claims were eligible for payment.

One such category of evidence excluded by the district court was evidence from AseraCare's external and internal auditors that AseraCare failed to ensure that patients were eligible for hospice benefits. For example, AseraCare's external auditor—the Corridor Group—issued a highly critical report during the relevant time period. Dkt. No. 251-98. The report found that AseraCare's "[c]ertification and recertification processes are ineffective"; that AseraCare agency "Medical Directors are not adequately involved in making initial eligibility determination[s]" of patients' terminal illness; and that AseraCare agency "Medical Directors do not consistently receive medical information prior to initial [Certifications of Terminal Illness]." *Id.* at ACDISC011769. The report also noted inadequately trained staff, high turnover, and a "low prioritization on competency." *Id.* at ACDISC011762, ACDISC011767. Further, the report described compliance with Medicare as not acceptable. *Id.* at ACDISC011768. AseraCare received similar reports from its internal auditors. *See*

Dkt. 251, at 77-82. Instead of responding to such reports and acting on their findings, AseraCare simply criticized the audit reports. *See id.* at 79.

The district court also excluded the testimony of Dr. Micca from trial. Dr. Micca was an AseraCare medical director from 2005 to 2006, who continued to interact with AseraCare in his capacity as medical director of a nursing home that used AseraCare services exclusively. Trial Tr. 920 (Aug. 11, 2015), Dkt. 514. Dr. Micca testified on a proffer outside the presence of the jury that AseraCare employees did not defer to his clinical judgment, certified and recertified patients for hospice benefits over his objections, and fought his efforts to apply Medicare guidelines for initial certification of hospice benefits. Trial Tr. 919-927 (Aug. 11, 2015), Dkt. 514. The court excluded Dr. Micca's testimony from the first phase of the trial based on its belief that Dr. Micca's evidence was not specifically connected to the 123 patients selected for trial. But, the court made clear that the evidence could be admissible in the second phase of the trial: "He can just [lambaste] AseraCare all day long that he wants to in phase two." *Id.* at 948. The district court should have considered this evidence in determining whether to grant summary judgment.

The existence of relevant, admissible evidence—both inside and outside the trial record—creating a dispute of fact as to whether AseraCare had a good faith belief further underscores the error of the district court's grant of summary judgment.

37

II.   **The Jury Was Properly Instructed Under the Correct Legal Standard, and This Court Should Therefore Also Reverse the District Court's Grant of a New Trial.**

A. Although this Court reviews a district court ruling on a motion for a new trial for abuse of discretion, a "[l]egal error is an abuse of discretion." *Woodard v. Fanboy LLC*, 298 F.3d 1261, 1268 n.14 (11th Cir. 2002). As described above, the district court committed legal error when it determined that "'[e]xpressions of opinion, scientific judgments, or statements as to conclusions about which reasonable minds may differ *cannot be false*.'" Dkt. 482, at 16 (quoting *Lincare Holdings*, 116 F. Supp. 3d at 1360).

The question of whether the claims in issue at trial were false is answered by determining whether "they claim[ed] reimbursement for services or costs that either are not reimbursable or were not rendered as claimed." S*ee Walker*, 433 F.3d at 1356; *see also United States v. Calhoon*, 97 F.3d 518 (11th Cir. 1996). Consistent with that test, the jury in this case was instructed that "[c]laims to Medicare may be false if the provider seeks payment, or reimbursement, for health care that is not reimbursable. For a hospice provider's claims to Medicare to be reimbursable, the patient must be eligible for the Medicare hospice benefit." Dkt. 440, at 11. To find a hospice claim ineligible, and therefore false, the jury was instructed to determine whether "documentation support[s] the medical prognosis" that the patient has a life expectancy of six months or less. Dkt. 440, at 12. This instruction reflects the

38

requirement, contained in federal regulations, that, to be payable under Medicare, hospice claims must seek payment only for services provided to terminally ill patients for whom the provider possesses sufficient medical documentation to support the patient's prognosis.

The jury instructions also properly set out the eligibility standards for hospice care and the factors a medical professional must consider when admitting or recertifying a patient for hospice care. Dkt. 440, at 11-12. And the court reminded the jury that it must find "proof that specific claims were in fact false when submitted to Medicare." *Id.* at 14. Guided by these instructions, the jury properly found that the claims at issue in this case were false as to 104 of the 121 patients selected for trial, because the "clinical information and other documentation" in AseraCare's medical records for those patients did not "support the medical prognosis" of a life expectancy of six months or less. 42 C.F.R. § 418.22(b)(2).

B. Despite providing the jury with instructions that accurately reflected False Claims Act law, the district court concluded that its instructions had been erroneous and set aside the jury's verdict. The court concluded that it should have advised the jury that "(1) 'the FCA requires "proof of an objective falsehood"'" and "(2) a mere difference of opinion, without more, is not enough to show falsity." Dkt. 482, at 19-20 (emphasis omitted). The district court notably waited to reach this conclusion until after a jury verdict in favor of the government, despite full briefing on the jury

instructions and ample opportunity to consider the proper instructions prior to trial.

In any event, given the detailed instructions provided by the court, it was simply

unnecessary to remind the jury that "proof of an objective falsehood," Dkt. 482, at

19, was required, and such an instruction would have added nothing to instructions

provided to the jury.[8] The failure to give such instruction thus by no means

invalidated the jury's verdict.

The district court's second proposed jury instruction was equally unnecessary,

as the jury was also adequately instructed on this point. To find a hospice claim

ineligible, and therefore false, the jury was instructed to determine whether

"documentation . . . support[s] the medical prognosis" that the patient has a life

expectancy of six months or less. Dkt. 440, at 12. The jury did not need to be told that

"a mere difference of opinion, without more, is not enough to show falsity." Dkt. 482,

at 19-20 (emphasis omitted). The jury was instructed as to the weight to be given to

the testimony of the government's expert witness: "Merely because such a witness has

been designated as an expert and expressed an opinion, however, does not mean that

you must accept that opinion. The same as with any other witness, you decide

---

[8] To the extent this instruction suggests that liability may not attach under the False Claims Act for opinions, that is incorrect. As explained, False Claims Act is not limited to "objective" falsehoods and subjective statements may be false or fraudulent if the speaker lacks facts to support the opinion. *See, e.g., Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 135 S. Ct. 1318, 1323, 1326-27 (2015); *United States ex rel. Loughren v. Unum Group*, 613 F.3d 300, 310-12 (1st Cir. 2010).

whether to rely upon that testimony." Dkt. 440, at 8. Nothing about those instructions invited or permitted the jury to accept without question the opinion of the government's medical expert. And it is clear that it did not. The fact that the jury rejected the government's expert's conclusions with respect to 17 of the 121 patients at issue confirms that the jury independently considered the medical documentation as instructed by the court. Dkt. 465 (verdict form). And, after the initial verdict form was completed, under direction from the district court, the jury made corrections to dates for certain patients, demonstrating again that the jury carefully evaluated each patient and claim, analyzing the medical records and the expert testimony presented as to each patient. *Id.*

In sum, a properly-instructed jury relied on the medical records in evidence, as interpreted and explained by competing medical experts, to determine whether the claims AseraCare submitted to Medicare were false. AseraCare is free to argue to the jury that it held a reasonable, good faith belief that its patients were eligible for hospice care, but such an argument is irrelevant to the question of whether the claims submitted by AseraCare were false. The jury was properly instructed on the issue of falsity; ample evidence presented during the trial demonstrated that AseraCare's claims were false under the correct legal theory; and the district court erred in concluding otherwise. The district court's order granting a new trial should therefore be reversed.

41

## CONCLUSION

For the foregoing reasons, this Court should reverse the order of the district court granting summary judgment and the order of the district court granting a new trial.

Respectfully submitted,

BENJAMIN C. MIZER
 *Principal Deputy Assistant Attorney*
 *General*

JOYCE WHITE VANCE
 *United States Attorney*
JENNY L. SMITH
 *Assistant United States Attorney*

 s/ Abby C. Wright
MICHAEL S. RAAB
ABBY C. WRIGHT
 *(202) 514-0664*
 *Attorneys, Appellate Staff*
 *Civil Division, Room 7252*
 *U.S. Department of Justice*
 *950 Pennsylvania Ave., N.W.*
 *Washington, D.C.  20530*

AUGUST 2016

## CERTIFICATE OF COMPLIANCE WITH
## FEDERAL RULE OF APPELLATE PROCEDURE 32(A)(7)

I certify that this brief complies with the type-volume limitation of Fed. R.

App. P. 32(a)(7)(B). This brief contains 10,212 words.


s/ Abby C. Wright
Abby C. Wright

## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2016, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

s/ Abby C. Wright
Abby C. Wright