No. 16-13004

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

v.

GGNSC ADMINISTRATIVE SERVICES, ET AL.,

Defendants-Appellees.

————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA

————————————

REPLY BRIEF FOR APPELLANT

————————————

BENJAMIN C. MIZER
  *Principal Deputy Assistant*
  *Attorney General*

JOYCE WHITE VANCE
  *United States Attorney*
JENNY L. SMITH
  *Assistant United States Attorney*

MICHAEL S. RAAB
ABBY C. WRIGHT
  *(202) 514-0664*
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7252*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave., N.W.*
  *Washington, D.C.  20530*

*United States v. GGNSC Administrative Services*, No. 16-13004

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to 11th Cir. R. 26.1-1, Appellant certifies that the following individuals and entities have an interest in this case:

AARP

AARP Foundation

Admin Parent HoldCo LLC

AdvanceMed, Inc.

American Academy of Hospice and Palliative Medicine

American Medical Association

AseraCare, Inc.

Bagby, Kelly

Barger, James F., Jr.

Beverly Enterprises

Billingsley, Michael B.

Bohl, Charles

Bowdre, the Honorable Karon O.

Brinkmann, Beth S.

Brooker, Renée

Brunson, Ronald R.

*United States v. GGNSC Administrative Services,* No. 16-13004

Bumpers, Brooke

Carroll, Kelly A.

Chastain, Richard Aaron

Christie, James Sturgeon

Cross, Nola J. Hitchcock

Dalby, J.D.

Danella, Nicholas Adam

Davis, Christina

deGruy, Tiffany

Demar, Jacklyn

Dombi, William

Drumm Corp.

Easton, Amy

Ehrlinspiel, Jason

Ellis, Cameron

Ellis, Laura

Everitt, Erin

Farmer, Marsha Brown

Fillmore Capital Partners LLC

Fillmore Strategic Investors LLC

*United States v. GGNSC Administrative Services,* No. 16-13004

Fillmore Strategic Management LLC

Fischbach, Nathan A.

Flanner, Mary C.

Frohsin, Henry

Global Partners in Care

Golden Gate Ancillary, LLC

Golden Living

GGNSC Administrative Services, LLC

GGNSC Holdings LLC

Granston, Michael

Gunasekera, Eva

Gyamfi, Maame

Heard, Eden

Hogan Lovells US LLP

Homecare Preferred Choice, Inc.

Hopper, Lundy & Bookman, PC

Hospice Action Network

Hospice and Palliative Nurses Association

Hospice of Eastern Carolina, Inc.

Hospice Preferred Choice, Inc.

*United States v. GGNSC Administrative Services,* No. 16-13004

Jones, Andrew A.

Julius, Derek

Keyserling, Jonathan

Larsen, Christian R.

Lembke, Matthew Howard

Lewis, London

Long, III, Don Boyden

Liu, Frederick

Manley, Roberta

Marshall, Mary Lester

Martin, Kimberly Bessiere

Micca, Joseph

Mizer, Benjamin C.

Motes, Carrie

National Association for Home Care and Hospice

National Hospice and Palliative Care Organization

National Hospice Foundation

Olson, William Edward

Palmetto GBA

Paradies, Debora

*United States v. GGNSC Administrative Services,* No. 16-13004

Peeples, Lloyd C.

Proto Equity Holdings

Raab, Michael S.

Reinstein, Noah

Rivera, William

Roush, Corey

SavaSeniorCare Administrative Services LLC

SavaSeniorCare LLC

Seagroves, James

Selden, Jack

Smith, Jenny L.

Snow, Holly

Spainhour, Charles F.

Tapie, Carolyn

Taxpayers Against Fraud Education Fund

Theis, Michael

Terpax, Inc.

TriCenturion, Inc.

Trout, Philip

United States of America

*United States v. GGNSC Administrative Services,* No. 16-13004

United States Department of Health and Human Services, Centers for

Medicare and Medicaid Services

United States Department of Health and Human Services, Office of Inspector

      General

Vance, Joyce White

Vernon, David J.

Waldman, Joshua

Walthall, J. Elliott

Ward, Stacy Gerber

Washington State Investment Board

Wertkin, Jeffrey

Woodke, Lane

Wright, Abby C.

Yavelberg, Jamie

Yevtukhova, Olga

Zaragoza, Dawn Richardson

No publicly traded corporation has an interest in this suit.

# TABLE OF CONTENTS

**Page(s)**

CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT

INTRODUCTION AND SUMMARY ..............................................................................1

ARGUMENT ...................................................................................................................6

I.  The District Court Erred in Granting Summary Judgment
    Because the Government May Use Medical Records and
    Expert Medical Testimony Interpreting Those Records To
    Prove That Claims Are False .....................................................................6

    A.  A claim is ineligible for reimbursement under Medicare
        if the medical record does not contain documentation that
        supports a prognosis of a life expectancy of six months or less ...............6

    B.  The district court erred in concluding that the government
        failed to present sufficient evidence demonstrating that the
        claims submitted were false ........................................................................12

        1.  The summary judgment record demonstrates the
                existence of triable questions of fact regarding the
                falsity of AseraCare's claims ...........................................................12

        2.  AseraCare's contention that the government's proof
                was inadequate because it failed to demonstrate
                "an objective falsehood" fails to advance its claim.........................14

        3.  This case does not concern mere differences of opinion,
                and a determination based on clinical medical judgment
                can be false .......................................................................................16

        4.  AseraCare errs in arguing that summary judgment was
                proper because of the government's decisions about what
                evidence to present ...........................................................................22

II.  The District Court Erred in Granting a New Trial ...............................25

CONCLUSION .................................................................................................28

CERTIFICATE OF COMPLIANCE WITH
FEDERAL RULE OF APPELLATE PROCEDURE 32(A)(7)

CERTIFICATE OF SERVICE

# TABLE OF CITATIONS

**Cases:**                                                                 **Page(s)**

*Allison v. McGhan Med. Corp.,*

    184 F.3d 1300 (11th Cir. 1999) ..................................................................16

*Celotex Corp. v. Catrett,*

    477 U.S. 317 (1986) ..................................................................................12

*Druding v. Care Alts., Inc.,*

    164 F. Supp. 3d 621 (D.N.J. 2016) ............................................................20

*Gasoline Prods. Co. v. Champlin Ref. Co.,*

    283 U.S. 494 (1931) ..................................................................................25

*Harrison v. Westinghouse Savannah River Co.,*

    176 F.3d 776 (4th Cir. 1999) ....................................................................14

*Muscarello v. United States,*

    524 U.S. 125 (1998) ....................................................................................8

*\*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund,*

    135 S. Ct. 1318 (2015) ..............................................................................14

*Presidio Enters., Inc. v. Warner Bros. Distrib. Corp.,*

    784 F.2d 674 (5th Cir. 1986) ....................................................................14

*United States v. Calhoon,*

    97 F.3d 518 (11th Cir. 1996) ....................................................................27

* Authorities upon which we chiefly rely are marked with asterisks.

*United States v. Science Applications Int'l Corp.,*

    626 F.3d 1257 (D.C. Cir. 2010) ......................................................19

*United States ex rel. Fowler v. Evercare Hospice, Inc.,*

    2015 WL 5568614 (D. Colo. Sept. 21, 2015) ..............................21

*United States ex rel. Geschrey v. Generations Healthcare LLC,*

    922 F. Supp. 2d 695 (N.D. Ill. 2012) ................................... 21, 22

*United States ex rel. Hayward v. SavaSeniorCare, LLC,*

    2016 WL 5395949 (M.D. Tenn. Sept. 27, 2016).........................20

*United States ex rel. Hill v. University of Med. & Dentistry of N.J.,*

    448 F. App'x 314 (3d Cir. 2011)........................................... 18, 20

*United States ex rel. Jones v. Brigham & Women's Hospital,*

    678 F.3d 72 (1st Cir. 2012)...........................................................19

*United States ex rel. Morton v. A Plus Benefits,*

    139 F. App'x 980 (10th Cir. 2005) ..............................................18

*United States ex rel. Oliver v. Parsons, Co.,*

    195 F.3d 457 (9th Cir. 1999) .......................................................18

*United States ex rel. Riley v. St. Luke's Episcopal Hospital,*

    355 F.3d 370 (5th Cir. 2004)........................................................19

*\*United States ex rel. Walker v. R&F Props. of Lake Cty., Inc.,*

    433 F.3d 1349 (11th Cir. 2005)............................................. 6, 27

iv

*United States ex rel. Wall v. Vista Hospice Care, Inc.,*

    2016 WL 3449833 (N.D. Tex. June 20, 2016) ........................................................20

*\*Universal Health Servs., Inc. v United States ex rel Escobar,*

    No. 15-7 (S. Ct. Apr. 19, 2016)........................................................18

*Woodard v. Fanboy LLC,*

    298 F.3d 1261 (11th Cir. 2002)........................................................26

**Statutes:**

42 U.S.C. § 1395x ........................................................6

42 U.S.C. § 1395y(a)(1)(c)........................................................ 2, 6

**Regulations:**

*42 C.F.R. § 418.3 ........................................................ 6, 9

42 C.F.R. § 418.20 ........................................................6

*42 C.F.R. § 418.22 ........................................................2, 7, 8

42 C.F.R. § 418.104 ........................................................13

**Rule:**

Fed. R. Civ. P. 56(a) ........................................................12

**Other Authorities:**

64 Fed. Reg. 54,031 (Oct. 5, 1999) .....................................................................10

70 Fed. Reg. 70,532 (Nov. 22, 2005) ...................................................................8

76 Fed. Reg. 47,302 (Aug. 4, 2011).....................................................................15

78 Fed. Reg. 48,234 (Aug. 7, 2013)......................................................................7

79 Fed. Reg. 50,452 (Aug. 22, 2014)............................................................ 7, 15

## INTRODUCTION AND SUMMARY

After a seven-week trial, a properly instructed jury found that AseraCare violated the False Claims Act (FCA) by submitting false claims for reimbursement to the federal government for hospice services provided to 104 patients. Relying on the medical records of those patients and expert medical testimony interpreting those records, the jury concluded that the claims AseraCare submitted were false because the patients' medical records did not support a prognosis of terminal illness. As explained in our opening brief, the district court—through a series of procedurally anomalous rulings—discarded the jury's verdict and granted summary judgment to AseraCare.

I. Instead of arguing that its patients' medical records support a prognosis of terminal illness, AseraCare argues on appeal that a physician's certification of terminal illness is "determinative" of a patient's eligibility for hospice services and a hospice provider's entitlement to Medicare reimbursement for those services. Recognizing the extremity of such a view, AseraCare purports to soften its position, explaining that a claim seeking reimbursement for hospice services might be false if the physician signing the certification lied, was deceived by false information, or behaved irrationally.

AseraCare's argument defies both the text of the relevant statutory and regulatory provisions and common sense. As explained in our opening brief, in an

FCA suit concerning eligibility for payment under Medicare, a healthcare provider's claim is false if it is not reimbursable. Medicare only reimburses for hospice care that is "reasonable and necessary for the palliation or management of terminal illness," and a signed physician certification of terminal illness is required. 42 U.S.C. § 1395y(a)(1)(c). In addition, as a separate condition of payment, clinical information in the patient's medical record must support a prognosis of terminal illness. 42 C.F.R. § 418.22. To hold otherwise would entitle hospice providers to reimbursement for services provided to *any* individual, regardless of medical condition, assuming the provider could find a physician willing to sign the certification. And such a holding would affect not only the FCA, but also the very terms under which the Centers for Medicare & Medicaid Services (CMS) may deny payment. AseraCare offers no support to justify such a counter-intuitive payment scheme.

Contrary to AseraCare's position, the government may prove falsity in a medical services FCA case by presenting to the jury medical records and expert testimony elucidating those medical records. And the government in this case did just that: as the jury correctly recognized, the medical records of AseraCare's patients were replete with information directly contradicting a prognosis of a life expectancy of six months or less. AseraCare would have been free to argue during the second phase of the trial that it held a reasonable, good-faith belief that it was entitled to payment based on the existence of physician certifications. But that argument concerns whether AseraCare *knowingly* submitted false claims to the government and is not

2

dispositive of the question of whether the claims submitted by AseraCare were *false*. The district court's grant of summary judgment to AseraCare on the ground that the government failed to present sufficient evidence of falsity was therefore incorrect.

AseraCare contends that the government's evidence was insufficient to present a genuine factual dispute to preclude summary judgment because the FCA requires proof of an "objective falsehood." Even assuming that this case is best understood as concerning physician "opinions," AseraCare agrees that such opinions can be actionable when not supported by facts.

AseraCare also argues that mere differences of opinion cannot be false. But the government's proof at trial and in the summary judgment record did not present a mere disagreement among physicians. Rather, the medical records of the patients selected for trial contained facts about their clinical conditions that—viewed in light of the applicable medical guidelines—demonstrated that the patients did not have life expectancies of six months or less. None of the cases relied upon by AseraCare in making this argument involved a bifurcated trial, as occurred here, and several of them plainly refer to "falsity" as a shorthand for describing the kind of *knowing* falsity required for liability under the FCA. In any event, the disagreement among district courts on this issue makes all the more urgent the need for this Court to make clear that the government may prove falsity in an FCA medical services case through medical record evidence and expert medical testimony.

AseraCare erroneously attempts to blame the United States for the district court's erroneous legal conclusions. The government properly relied on evidence from patient medical records and the testimony of the government's medical expert. The records and testimony in this case, at the very least, demonstrate the existence of genuine disputes of fact regarding the falsity of AseraCare's claims. The district court's grant of summary judgment should therefore be reversed.

II. AseraCare's defense of the district court's grant of a new trial lacks merit. The issue of whether the jury's verdict should be reinstated is not moot, and any Seventh Amendment issues should be addressed in the first instance by the district court.

AseraCare further errs in asserting that the district court's grant of a new trial was a proper exercise of the court's discretion. The jury instructions in this case reflected a proper understanding of falsity under the FCA. The jury was instructed that to find a hospice claim ineligible it was to determine whether documentation supported a prognosis of a life expectancy of six months or less. Guided by these instructions, the jury properly found that the claims at issue in this case were false as to 104 of the 121 patients selected for trial. The district court only vacated the jury's verdict because of the court's erroneous view of the law, and such legal error is an abuse of discretion. The district court's grant of a new trial should therefore also be reversed.

* * *

4

The United States fully supports hospice care for those who are eligible to receive hospice care services under Medicare and choose to forgo curative care. But hospice care is not appropriate for everyone: by electing the Medicare hospice benefit, Medicare patients waive all rights to Medicare payments for curative care. The facts proven at trial in this case demonstrate that many of AseraCare's patients were not eligible for hospice care services reimbursable under Medicare and should not have been provided with those services. It is of no benefit to the patient or the public if the patient is receiving, and the government is paying for, unnecessary medical services based on fraudulent claims.

AseraCare and its amici raise the specter of innocent hospice care providers caught up in FCA suits based on physicians' exercise of clinical judgment. But this specter is illusory: a hospice care provider acting reasonably, and in good faith, to ensure that its patients are eligible to receive hospice services under Medicare need not fear False Claims Act liability. In any event, as the record evidence demonstrates, AseraCare is not simply an innocent hospice provider. AseraCare was told by multiple sources that its certification processes were ineffective, that its medical directors were not adequately involved in making eligibility determinations, and that its medical directors did not consistently receive clinical information prior to certifying patients as terminally ill. *See infra* p.22. Yet it did not change those practices. And additional testimony offered by the government provided evidence that AseraCare managers pressured staff to admit patients regardless of eligibility and that medical directors

5

signed certifications of terminal illness without reviewing medical records at all. *See, e.g.*, Trial Tr. 596:18-22, 597:6-21 (Aug. 11, 2015), Dkt. 514. Reversing the district court poses no threat, therefore, of imposing FCA liability on providers truly operating in good faith to provide appropriate palliative services to individuals facing terminal illness. On the other hand, the district court's decision threatens to embolden unscrupulous providers and physicians to certify patients for hospice regardless of their patients' conditions.

## ARGUMENT

I.  **The District Court Erred in Granting Summary Judgment Because the Government May Use Medical Records and Expert Medical Testimony Interpreting Those Records To Prove That Claims Are False.**

   A.  **A claim is ineligible for reimbursement under Medicare if the medical record does not contain documentation that supports a prognosis of a life expectancy of six months or less.**

1. As this Court has explained, "Medicare claims may be false if they claim reimbursement for services or costs that either are not reimbursable or were not rendered as claimed." *United States ex rel. Walker v. R&F Props. of Lake Cty., Inc.*, 433 F.3d 1349, 1356 (11th Cir. 2005). Medicare will reimburse a provider for hospice care provided to "terminally ill" individuals that is "reasonable and necessary for the palliation or management of terminal illness." 42 U.S.C. § 1395y(a)(1)(c). Terminally ill individuals have a medical prognosis of a life expectancy of six months or less, if the illness runs its normal course. 42 U.S.C. § 1395x; 42 C.F.R. § 418.3.

For a patient to be eligible to elect Medicare hospice benefits—and for a hospice provider to be entitled to bill for such benefits—a patient must be certified as "terminally ill." *See* 42 C.F.R. § 418.20. The certification must (1) be signed by at least one physician, and (2) be accompanied by "[c]linical information and other documentation that support the medical prognosis" of terminal illness in the medical record. *Id.* at § 418.22.

2. AseraCare asserts on appeal that its patients' medical records are, except in one narrow circumstance, *see supra* p.10-11, irrelevant to the question of whether the claims it submitted for payment under Medicare were false. Br. 31. In AseraCare's view, the physician certification is "determinative," Br. 33; "[a] patient ha[s] a terminal prognosis or not only in the certifying physician's clinical judgment." Br. 35 n.10. Under this extraordinary understanding of applicable law, every patient with a signed certification is entitled to hospice services: the patient need not be terminally ill, nor need the patient's medical records support such a conclusion.

AseraCare is incorrect. Clinical information in the patient's medical record supporting a life expectancy of six months or less is a condition of payment for hospice care separate from and independent of a signed physician certification. 42 C.F.R. § 418.22; *see also* 79 Fed. Reg. 50,452, 50,470 (Aug. 22, 2014) ("A hospice is required to make certain that the physician's clinical judgment can be supported by clinical information and other documentation that provide a basis for the certification of 6 months or less if the illness runs its normal course."); 78 Fed. Reg. 48,234, 48,245

(Aug. 7, 2013) ("[C]ertifications and recertifications of hospice eligibility are statutory requirements for coverage and payment" and must include "[c]linical information and other documentation that support the medical prognosis"); 70 Fed. Reg. 70,532, 70,534-35 (Nov. 22, 2005); Trial Tr. 3587:11-18 (Sept. 3, 2015), Dkt. 526 (testimony of CMS representative) ("It's not simply enough for the physician to sign. . . . There has to be a sound basis and it has to be supported by the information that's in the clinical record.").

AseraCare erroneously urges that a supporting documentation requirement separate from the requirement for a physician certification is inconsistent with the text of the regulation. Br. 31-33. As an initial matter, it is entirely unclear why CMS would require documentation at all if the interpretation of the regulation were as toothless as AseraCare asserts. And nothing about the specific text of the regulation at issue here supports AseraCare's reading. In discussing the requirements for the certification of terminal illness, the regulation lists as a separate requirement that documentation in the medical record must support "the medical prognosis" contained in the certification. 42 C.F.R. § 418.22. And "the medical prognosis," as earlier described in the regulation, is the determination that an individual has a life expectancy of less than six months. Because the text of the regulation is clear, AseraCare (Br. 38) has failed to demonstrate any ambiguity in the relevant Medicare laws, let alone the "grievous ambiguity" required for application of the rule of lenity. *Muscarello v. United States,* 524 U.S. 125, 138-39 (1998).

To understand the extraordinary nature of AseraCare's position, it is important to remember that eligibility for hospice care is relevant not only to whether a claim is false under the FCA, but also to the question whether CMS must reimburse a hospice care provider. Under AseraCare's theory, if a physician certifies a patient as terminally ill, CMS is *required* to reimburse the hospice care provider unless it can determine that *no* other reviewer of the patient's medical records could possibly conclude the patient was terminally ill. Resp. Br. 38. Thus, not only is AseraCare's position without basis in law, it would also tie CMS's hands, requiring improper reimbursements and presenting CMS with a wholly unworkable "standard" to apply to payment determinations.

Similarly unpersuasive is AseraCare's reliance on CMS statements acknowledging that predicting life expectancy is not an exact science. Br. 34-35. Of course, no one can predict the hour of death, and the Medicare statute therefore places no definite cap on the length of hospice services. *Id.*; *see also* American Medical Association (AMA) Br. 15-16. But, as explained below, *see infra* p.15-16, standards exist to guide a hospice provider's determination of whether a patient is terminally ill. Moreover, FCA liability does not arise simply because a patient lives longer than expected. A prognosis is based on an illness taking its *"normal course."* 42 C.F.R. § 418.3. A claim is not false if a patient's illness runs a different course, and a provider cannot be liable under the FCA unless it *knew* that the patient was not eligible at the time of certification. *See* Resp. Br. 35.

3. In an effort to mask the extremity of its position, AseraCare offers three scenarios under which a claim for hospice care accompanied by a physician certification may be false (and also, therefore, the three circumstances under which CMS could deny payment). According to AseraCare, the government may prove falsity in a hospice services case by showing that the physician was lying, that the physician was given false information, or that "no reasonable physician . . . could have certified a specific patient as terminally ill." Br. 50-52. As an initial matter, the fact that in some cases there may be additional evidence relevant to falsity does not mean that the government *is required* to present such evidence to survive a motion for summary judgment.

In any event, AseraCare's contention that a claim may only be false if the physician is lying, is given false information, or is irrational has no basis in law or logic. Br. 50-52. This refinement of AseraCare's position does not solve its basic problem: under AseraCare's view of the law, CMS would be prevented from denying payment when one of its reviewers determines that medical records do not support a prognosis of terminal illness unless it also can demonstrate that "no reasonable" physician could have concluded that the patient was terminally ill. AseraCare, not surprisingly, offers nothing in the trial record, Medicare statute, its implementing regulations, or FCA that calls for such a result.

AseraCare's reliance on a government statement that "[p]atients can be certified for the Medicare Hospice Benefit only when it is reasonable to conclude that a

patient's life expectancy is six months or less if the illness runs its normal course" fails to advance its claim. Br. 52 (quoting 64 Fed. Reg. 54,031, 54,038 (Oct. 5, 1999)). It is not reasonable to certify a patient as terminally ill if the patient's medical records do not support the prognosis. And the statement does not address the condition of payment requiring supporting documentation, which is emphasized elsewhere in the same document. 64 Fed. Reg. at 54,037-38 ("[A]ppropriate documentation [must] support the applicable reimbursement eligibility criteria."); *id.* (Hospices "should require, at a minimum, that . . . [a] patient's medical record contain complete documentation to support the certification made by the hospice physician or attending physician."). It is not the case that a hospice provider is entitled to reimbursement for Medicare hospice benefits any time it might be "reasonable" to conclude that a patient has a life of expectancy of less than six months. *See* Trial Tr. 1203:18-21-1212:12-16 (Aug. 17, 2015), Dkt. 516 (Claim reviewers "look in the clinical records to determine if there is substantiating clinical evidence in that medical record that supports the physician certification statement" to assess whether hospice claims are accurate and payable.). The "reasonableness" of a provider's conclusion speaks to whether a false claim was submitted with the requisite scienter, not whether the provider is entitled to payment.

In this regard, the AMA states that "[a] conclusion cannot be false if it is reasonable." AMA Br. 5. But the AMA elsewhere properly recognizes that a false statement is one that is "inconsistent with the facts." *Id.* at 11-12. That is precisely

what the government proved to the jury in this case: the claims of physicians regarding the prognoses of their patients were inconsistent with the facts of the patients' conditions, as documented in the medical records.

**B. The district court erred in concluding that the government failed to present sufficient evidence demonstrating that the claims submitted were false.**

**1. The summary judgment record demonstrates the existence of triable questions of fact regarding the falsity of AseraCare's claims.**

As explained, Medicare claims are false under the FCA if they seek payment for services that are not reimbursable under Medicare, and claims for hospice care are not reimbursable under Medicare if the patient's medical record does not support a terminal prognosis. Under this correct legal standard, the evidence submitted by the government demonstrated, at the very least, the existence of genuine disputes of material fact on the question. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(a).

The government's opposition to the district court's notice that it would *sua sponte* consider summary judgment contained detailed summaries of the medical records admitted into evidence for each patient selected for trial. Those medical records contain facts about the patients' conditions, which the jury properly evaluated in determining whether AseraCare's claims for those patients were false. *See* Dkt. 493-1, at 14-270. The government described a subset of sample patients in its opening brief, and this brief will not repeat that discussion here. But even a quick review of

those patients' medical records makes plain that the records do not support a prognosis of a life expectancy of less than six months. For example, Ralph S., an Alzheimer's patient, was verbal and conversant with staff during the nearly two years he was receiving hospice services, from May 2007 through March 2009, before he revoked hospice care to seek curative treatment. *See id.* at 222-26. And the medical records of both Samuel T. and William T. (both of whom eventually left hospice care) contain notations that the patients were *not* eligible for hospice. *See, e.g., id.* at 237-38, ¶ 939; *id.* at 261-62, ¶ 1037. This case does not involve records that merely fail to "fully convey" providers' analysis. *See* AMA 20. That "face-to-face" examination of patients may be part of a physician certification does not change this analysis. AMA 5-6, 9. Such observations should be recorded in the medical record, especially if they contradict other documentation in the record. *See* 42 C.F.R. § 418.104 (The "clinical record must contain correct clinical information . . . [and] [a]ll entries must be legible, clear, complete, and appropriately authenticated and dated.").

As explained in our opening brief, AseraCare would have been free to argue during the second phase of the trial that it held a reasonable, good-faith belief that it was entitled to payment and that the services provided to the patients included in the sample, including Ralph S., Samuel T, and William T., were reimbursable under Medicare. But that argument concerns whether AseraCare *knowingly* submitted false claims to the government and is not relevant to the question of whether the claims

submitted by AseraCare were *false*. The government presented abundant evidence that those claims were false.

## 2. AseraCare erroneously contends that the government's proof was inadequate because it failed to demonstrate "an objective falsehood."

AseraCare contends that "[f]alsity under the FCA requires proof of an objective falsehood." Br. 20. But AseraCare concedes that opinions may be actionable if "an opinion did not reflect the speaker's actual belief, or [if] the speaker knew facts which would preclude an opinion or [if the speaker] lacked facts to support the opinion." Br. 22 (citing, e.g., *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 135 S. Ct. 1318, 1323, 1326-27 (2015)). AseraCare contends that such opinions should be called "objective falsehoods." *Id.*

This difference in nomenclature is immaterial to the issues on appeal. The government demonstrated (and a jury accepted) that the facts documented in the medical records of the patients selected for trial did not support a prognosis of a life expectancy of six months or less. The question of whether the patients in the sample were eligible for hospice care reimbursed under Medicare—whether deemed an "objective falsehood" or an opinion unsupported by facts—is one that "admit[s] of being adjudicated true or false," and may form the basis for liability under the FCA. *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 792 (4th Cir. 1999) (quoting *Presidio Enters., Inc. v. Warner Bros. Distrib. Corp.*, 784 F.2d 674, 679 (5th Cir. 1986)).

Amicus SavaSeniorCare (Sava) mistakenly urges (Br. 6, 9-10) that the question of a patient's life expectancy is a standardless inquiry. Under Sava's theory, it is difficult to conceive how the government would *ever* prove fraud in the hospice care context. In any event, as the government's expert testified, there *are* standards that guide a physician's decision to certify a patient as terminally ill: published medical guidelines, including "local coverage determinations," and a physician's clinical training on the normal course of particular diseases.[1] *See* 79 Fed. Reg. at 50,471; 76 Fed. Reg. 47,302, 47,315 (Aug. 4, 2011); Trial Tr. 3428-29 (Sept. 2, 2015), Dkt. 525; *see also* Trial Tr. 3428-29 (Sept. 2, 2015), Dkt. 525 at 3431:8-17-3440:25 (discussing heart disease, heart failure, coronary artery disease, adult failure to thrive, Alzheimer's Disease, and dementia). AseraCare's medical experts similarly acknowledged that local coverage determinations assist physicians in assessing hospice eligibility. Trial Tr. 5563:11-15 (Dr. Gail Cooney) (Sept. 22, 2015), Dkt. 535; Trial Tr. 6265:17-23 (Dr. Terry Melvin) (Sept. 28. 2015), Dkt. 538.

The government acknowledges that the definition of terminal illness does not lend itself to a one-size-fits-all approach, and for that reason CMS does not require any "specific" findings in the medical records. *See* Resp. Br. 36. This does not mean,

---

[1] As AseraCare notes, the government did not take the position that local coverage determinations are the exclusive means of demonstrating that a patient has a prognosis of a life expectancy of six months or less. Br. 37 n.11. These guidelines nonetheless provide an indispensable source of information regarding the kinds of clinical information that support a prognosis of a life expectancy of six months or less.

however, that no objective standards govern certification of terminal illness. And it

further does not mean that the certifying physician's clinical judgment is "irrelevant"

or that the government's expert's opinion was "controlling." Resp. Br. 31; *see also* Trial

Tr. 1245:14-24 (testimony of Mary Jane Schultz) (Aug. 17, 2015), Dkt. 516. It is up to

a jury to decide the question of falsity, by weighing the medical records put into

evidence and the competing medical expert testimony. *See Allison v. McGhan Med.*

*Corp.*, 184 F.3d 1300, 1321 (11th Cir. 1999) ("[E]valuating witness credibility and

weight of the evidence [is] the ageless role of the jury"). And the fact that the jury

found most, but not all, of the claims false underscores the jury's ability to make a

determination as to which claims meet the applicable guidelines.

> **3.    This case does not concern mere differences of opinion, and
> a determination based on clinical medical judgment can be
> false.**

a. Having set up the physician certification as "determinative" of eligibility and

characterizing that medical judgment as merely an opinion, AseraCare repeats the

district court's erroneous statement that "a mere difference of opinion is not enough

to establish falsity under the FCA." Resp. Br. 25. For the reasons explained above,

each of these premises is incorrect. Reimbursement for hospice is not based solely on

the determination of the physician issuing a certification of terminal illness, but also

requires documentation in the medical record that supports a prognosis of a life

expectancy of six months or less. And the physician certification is not a mere

"opinion," but rather a medical judgment based on published guidelines and clinical

experiences. Simply put, the government's case does not turn on "differences of opinion."

That one of the government's witnesses testified that two physicians could disagree on a certification and neither be "wrong" is of no moment. *See* Resp. Br. 37. Assuming the evidence from the medical records were truly in equipoise, the government would have failed to carry its burden of demonstrating that the claims submitted were false. But that is not the case here. The evidence presented to the jury clearly demonstrated that the claims submitted by AseraCare were false as to 104 of the 121 patients selected for trial. *See supra* p.12-13; *see also* Trial Tr. 1277:14-1278:15 (Aug. 17, 2015), Dkt. 516.

b. Even assuming the district court's statement that mere differences of opinion cannot be false were relevant to this case, the cases cited invoking that principle fail to support AseraCare's position. It is plain from this Court's decision in *Walker* that disagreement over a claim's eligibility for reimbursement under Medicare does not preclude a determination that the claim is false.[2] And in each of the cases upon which AseraCare relies, the trial court considered the question of whether the claims submitted were false as part of its consideration of whether the claims were *knowingly* false. In that context, the statement that "medical and scientific judgments

---

[2] AseraCare and its amici misunderstand the government's reliance on *Walker*. Sava Br. 7; Resp. Br. 39-40. The government does not rely on *Walker* to argue that the relevant regulation here is ambiguous.

about which reasonable minds can disagree are not false" is best understood as a somewhat imprecise way of stating that the existence of good-faith disagreement demonstrates a lack of a *knowing* falsehood. *See United States ex rel. Oliver v. Parsons, Co.*, 195 F.3d 457, 464 (9th Cir. 1999) ("A contractor relying on a good-faith interpretation of a regulation is not subject to liability, not because his or her interpretation was correct or 'reasonable' but because the good faith nature of his or her action forecloses the possibility that the scienter requirement is met."). Indeed, one of the cases relied upon by AseraCare, *United States ex rel. Morton v. A Plus Benefits,* 139 F. App'x 980, 982 (10th Cir. 2005) (cited at Br. 26-27), expressly stated that "[t]he FCA does not define 'false' or 'fraudulent,' but its falsity and scienter requirements are inseparable." Similarly, in *United States ex rel. Hill v. University of Med. & Dentistry of N.J.*, 448 F. App'x 314, 316 (3d Cir. 2011), the Third Circuit, in discussing the falsity of a claim, noted that there had been no evidence of "scientific *misconduct*." *Id.* (emphasis added).

AseraCare argued for a bifurcated trial over the government's strenuous objection. AseraCare erroneously now suggests that the district court could not have conflated the concepts of falsity and scienter because of the bifurcation order. Br. 48. But that is precisely what happened. As the Supreme Court recently explained, there is no need to "adopt[] a circumscribed view of what it means for a claim to be false or fraudulent," because "concerns about fair notice and open-ended liability 'can be effectively addressed through strict enforcement of the Act's materiality and scienter

18

requirements.'" *Universal Health Servs., Inc. v United States ex rel Escobar*, No. 15-7, slip

op. 13-14 (S. Ct. Apr. 19, 2016) (quoting *United States v. Science Applications Int'l Corp.*,

626 F.3d 1257, 1270 (D.C. Cir. 2010)).

The district court was concerned that AseraCare might have held a good-faith

belief that it was submitting claims that were not false. But those concerns were

misplaced: if AseraCare held a reasonable, good-faith belief that the claims it was

submitting were for eligible patients, then AseraCare would not be subject to liability

under the FCA because it would not have submitted *knowingly false* claims. But that

would not make the claims any less false. And although it is true that the FCA

"requires more" than a medical malpractice suit (Resp. Br. 29), that something more is

scienter.

AseraCare similarly misapprehends the Fifth Circuit's decision in *United States*

*ex rel. Riley v. St. Luke's Episcopal Hospital*. Br. 26 & n.7. The court of appeals in that

case explained that although it agreed in principle with the lower court that opinions

about which reasonable minds may differ cannot be "false," it specifically noted that

this principle requires a reviewing court to undertake a scienter analysis: "We agree in

principle with the district court and accept that the FCA requires a statement *known to*

*be false*, which means a lie is actionable but not an error." 355 F.3d 370, 376 (5th Cir.

2004) (emphasis added). The Fifth Circuit plainly agreed with what it viewed as the

district court's conclusion: that FCA liability requires a statement *known* to be false.

c. The cases upon which AseraCare relies are inapplicable for additional reasons. For example, in both *United States ex rel. Jones v. Brigham & Women's Hospital*, 678 F.3d 72, 87 (1st Cir. 2012) (reversing a district court's grant of summary judgment and rejecting the district court's finding that because a particular method of analysis might lead to different results depending on its application, the results stated in the defendant's grant application could not be said to be "false"), and *University of Medicine & Dentistry of New Jersey*, 448 F. App'x at 316, there was no record by which a jury could determine whether the scientific claims in grant materials submitted to the government were supported. That is not the case here: the jury properly considered patient medical records and expert testimony describing those records in reaching its conclusion.

Although AseraCare also relies on district court decisions in its effort to defend the judgment here, AseraCare ignores a number of contrary district court rulings. *See, e.g., United States ex rel. Hayward v. SavaSeniorCare, LLC*, 2016 WL 5395949, at *12-14 (M.D. Tenn. Sept. 27, 2016) (denying skilled nursing facilities' motion to dismiss FCA complaint and rejecting arguments that "clinical disagreements" cannot amount to falsity and that the United States was required to allege "objectively false" claims); *Druding v. Care Alts., Inc.*, 164 F. Supp. 3d 621, 629-32 (D.N.J. 2016) (holding that relator could proceed based on allegations that a hospice submitted claims without documentation supporting beneficiary's terminal prognosis). And the fact that the district court in *United States ex rel. Wall v. Vista Hospice Care, Inc.*, No. 3:07-cv-00604-

20

M, 2016 WL 3449833 (N.D. Tex. June 20, 2016), has expressly followed the reasoning of the district court in this case, *see* Resp. Br. 27-28, is precisely why it is so important for this Court to correct the result in this case.

AseraCare's reliance on *United States ex rel. Fowler v. Evercare Hospice, Inc.*, 2015 WL 5568614, at *7 (D. Colo. Sept. 21, 2015), is misplaced. The court in that case denied a motion to dismiss because "the requirement that physicians' certifications are accompanied by clinical information and other documentation that support a patient's prognosis is a condition of payment under applicable Medicare statutes and regulations." The court in *Evercare Hospice* also rejected the defendant's argument that alleging a lack of support for a terminal prognosis in patients' medical records is insufficient to plead falsity under the FCA. The line of the opinion cited in AseraCare's brief ("If the complaint was based entirely on disagreements with [the defendant's] certifying physicians in specific cases, the government's references to [certain] patients would be insufficient to state a claim," *see* Br. 28) refers only to the fact that FCA liability also requires proof of knowing falsity. As the court explained, "the government has plausibly alleged that Evercare adopted a policy that resulted in widespread over-certification of patients as hospice-eligible." *Id.* at *9.

AseraCare's invocation of *United States ex rel. Geschrey v. Generations Healthcare LLC*, 922 F. Supp. 2d 695, 703 (N.D. Ill. 2012), is similarly misplaced. The *Geschrey* case did not involve a difference of opinion among physicians based on medical records (which the relators had not gathered), but rather a difference of opinion

between the certifying physician and the non-physician relators. *See id.* at 703-04. Relators' complaint in that case relied exclusively on their "personal knowledge of the alleged fraud based on their participation in an interdisciplinary team." *Id.*

d. Even if good faith and reasonableness were components of the falsity inquiry, the government presented evidence in the summary judgment record that demonstrates that AseraCare did not hold a good-faith, reasonable belief that the claims it submitted were true. As explained in the government's opening brief (Br. 36-37), triable fact issues on the question of AseraCare's state of mind remain. For example, the district court recognized that the government had proffered evidence that might prove AseraCare's "motive" and "knowledge" in the second phase of the trial. Dkt. 432, at 6, 11. That evidence included condemnatory evidence from AseraCare's internal and external auditors. *See* Dkt. 251-98. For example, audit reports found that AseraCare's "[c]ertification and recertification processes are ineffective"; that AseraCare agency "Medical Directors are not adequately involved in making initial eligibility determination[s]" of patients' terminal illness; and that AseraCare agency "Medical Directors do not consistently receive medical information prior to initial [Certifications of Terminal Illness]." *Id.* at ACDISC011769.

**4.    AseraCare errs in arguing that summary judgment was proper because of the government's decisions about what evidence to present.**

Attempting to deflect attention away from the district court's legal error, AseraCare portrays the government's loss on summary judgment as a self-inflicted

wound. Br. 40. But the government neither "backed" nor "painted itself" into a corner regarding the evidence it presented at trial to prove falsity. Br. 41 (quoting Dkt. 497, at 7; Dkt. 492, at 22); the government properly demonstrated the falsity of the claims submitted by AseraCare, based on the medical records of the patients selected for trial and medical expert evaluations of those records.

The fact that the government's medical expert testified that, as to several patients, he had changed his view, Resp. Br. 41-42, in no way undermines the jury's ability to hear his testimony and evaluate the patient medical records. And the government's testimony was not based on "hindsight." *See* Trial Tr. 3426:12-23 (testimony of Dr. Solomon Liao) (Sept. 2, 2015), Dkt. 525. The jury properly evaluated the medical records, as explained by the government's medical expert and concluded that most, but not all, of the sample patients were not eligible to receive Medicare hospice benefits.

Nor was it improper for the government's medical expert to decline to testify that "no reasonable" physician could have certified the patients as terminally ill. Resp. Br. 42. As explained, "no reasonable physician" is not the applicable standard for determining whether a claim is eligible for payment under Medicare. *See supra* p.10-11.[3]

---

[3] Even if this Court were to adopt a "no reasonable physician" standard, the district court's grant of summary judgment should still be reversed. Because the district court had rejected defendants' argument on this point, the jury was not instructed to find falsity based on this standard and the government did not develop evidence in the summary judgment record on whether any "reasonable physician" could have certified the patients.

And AseraCare's argument that the medical expert "did not testify that AseraCare lacked documentation," Resp. 43-44, is only a retread of its argument that documentation in the medical records need only support the certifying physician's "determinative" view of a patient's prognosis, a "standard" virtually impossible to violate or enforce. *See supra* p.8-9.

AseraCare also misunderstands the function of the evidence presented by the government during the first phase of the trial. Br. 45-46. The testimony of nine former AseraCare employees provided context for the jury to use in evaluating the competing testimony regarding whether documentation in the medical records of the patients selected for trial supported a prognosis of a life expectancy of six months or less. For example, Vicki Stutts, a former Director of Clinical Services, testified that she did not provide the AseraCare physician with any clinical information when bringing him certifications to sign. Trial Tr. 596:18-22 (Aug. 11, 2015), Dkt. 514; *see also* Trial Tr. 470-71 (Aug. 10, 2015), Dkt. 513. There was also ample testimony that admissions employees were pressured to admit ineligible patients. For example, Ms. Stutts testified that when she declined to admit ineligible patients to hospice, she was instructed "to go back to the chart and just find whatever I needed to find to admit the patient." Trial Tr. 597:6-21 (Aug. 11, 2015), Dkt. 514; *see also* Trial Tr. 1023, 1070 (Aug. 12, 2015), Dkt. 515.

This evidence was not offered to prove falsity as to specific claims, and AseraCare attacks a straw person in so urging. Resp. Br. 46. In any event, with respect

to the grant of summary judgment, the district court could properly consider all the evidence developed by the government, not just the evidence presented to the jury. Because the government presented ample evidence that documentation in the medical records of the patients selected for trial did not support prognoses of a life expectancy of six months or less, the district court's grant of summary judgment should be reversed.

## II.    The District Court Erred in Granting a New Trial.

A. If this Court agrees with the government and reverses the district court's grant of summary judgment, the Court should also reverse the grant of a new trial and reinstate the jury verdict. AseraCare urges that the Court need not even consider the new trial motion because, in its view, the issue is moot. Resp. Br. 54. And that is because, according to AseraCare, reinstatement of the jury verdict would violate the Seventh Amendment. *Id.*

At this stage, any Seventh Amendment concerns are conjectural. There is no Seventh Amendment impediment to reinstating the jury verdict. Once that verdict is reinstated—as it should be—the district court may consider whether future proceedings with a different jury would violate the Seventh Amendment. The district court will be best positioned to consider any Seventh Amendment arguments that AseraCare might wish to make regarding whether the issues in the two phases of the trial are not "distinct and separable" (an argument which AseraCare tacitly acknowledges is in substantial tension with its bifurcation arguments, *see* Resp. Br. 55

n. 21). *Gasoline Prods. Co. v. Champlin Ref. Co.*, 283 U.S. 494, 500 (1931). Moreover, reinstating the jury verdict would not be a pointless exercise, given that the government also brought common-law claims, which, although depending on the same definition of "falsity," do not require proof of scienter.

B. In defending the merits of the new trial motion, AseraCare fares no better. AseraCare attempts to paint the district court's decision on the new trial motion as simply a discretionary determination that the jury instructions were inadequate. *See* Resp. Br. 56. But, as explained in our opening brief, the district court's decision to grant a new trial was driven by its erroneous interpretation of governing law and what it means for a claim to be false under the FCA. The district court's *sua sponte* conclusion that it failed to adequately instruct the jury stems entirely from its erroneous belief that more evidence beyond what the government had presented to the jury was required to demonstrate falsity. And although this Court reviews a district court ruling on a motion for a new trial for abuse of discretion, such a "[l]egal error is an abuse of discretion." *Woodard v. Fanboy LLC*, 298 F.3d 1261, 1268 n.14 (11th Cir. 2002). AseraCare's discussion of the deference shown a judge granting a new trial because of legal error (Resp. Br. 56) has no bearing here because there was no error in the jury instructions. For this reason, AseraCare's assertion that this Court should ignore the jury's findings cannot withstand scrutiny. The jury was properly instructed, and its findings are not "legally void." Resp. Br. 45 n.15.

Under a correct interpretation of the FCA and Medicare law, the question of whether the claims at issue were false is answered by determining whether AseraCare "claim[ed] reimbursement for services or costs that either are not reimbursable or were not rendered as claimed." S*ee Walker,* 433 F.3d at 1356; *see also United States v. Calhoon*, 97 F.3d 518 (11th Cir. 1996). As explained in our opening brief, the jury instructions were fully consistent with this test, and the jury reached a conclusion fully supported by the evidence. *See* Dkt. 440, at 11-14. The district court's order granting a new trial should be reversed and the jury's verdict reinstated.

## CONCLUSION

For the foregoing reasons, this Court should reverse the orders of the district court granting summary judgment and granting a new trial.

Respectfully submitted,

BENJAMIN C. MIZER
  *Principal Deputy Assistant Attorney*
  *General*

JOYCE WHITE VANCE
  *United States Attorney*
JENNY L. SMITH
  *Assistant United States Attorney*

  s/ Abby C. Wright
MICHAEL S. RAAB
ABBY C. WRIGHT
  *(202) 514-0664*
  *Attorneys, Appellate Staff,*
  *Civil Division, Room 7252*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave., N.W.*
  *Washington, D.C.  20530*

NOVEMBER 2016

## CERTIFICATE OF COMPLIANCE WITH
## FEDERAL RULE OF APPELLATE PROCEDURE 32(A)(7)

I certify that this brief complies with the type-volume limitation of Fed. R.

App. P. 32(a)(7)(B). This brief contains 6,919 words.


s/ Abby C. Wright

_____

Abby C. Wright

## CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2016, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

s/ Abby C. Wright

_____

Abby C. Wright